UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Sherry Brown, *on her own behalf and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>Rita's Water Ice Franchise Company LLC,<br><br>Defendant. | Civil Action No.: _____<br><br><br><br><br>**CLASS ACTION COMPLAINT**<br>**JURY TRIAL DEMANDED** |

For this Class Action Complaint, the Plaintiff, Sherry Brown, by and through her undersigned counsel, pleading on her own behalf and on behalf of others similarly situated, states as follows:

## **INTRODUCTION**

1.  Plaintiff, Sherry Brown ("Plaintiff"), brings this class action for damages resulting from the illegal actions of Rita's Water Ice Franchise Company LLC. ("Rita's" or "Defendant"). Rita's sent unauthorized automated text messages to Plaintiff's cellular phone in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "TCPA").

2.  Wireless spam is a growing problem in the United States. In April 2012, the Pew Research Center found that 69% of texters reported receiving unwanted spam text messages, while 25% reported receiving spam texts weekly. http://www.pewinternet.org/fact-sheets/mobile-technology-fact-sheet/ (last visited June 4, 2015); *see also* Nicole Perlroth, Spam Invades a Last Refuge, the Cellphone, N.Y.Times, April 8, 2012, at A1 ("In the United States,

consumers received roughly 4.5 billion spam texts [in 2011], more than double the 2.2 billion received in 2009 . . . .").

3. Rita's is the franchisor of Rita's Italian ice and custard shops located throughout the United States. In an effort to market its franchisees' products, Rita's set up "Cool Alerts," an automated system whereby it sends consumers text-message or email notifications when certain Rita's product flavors are available at their local Rita's establishment.

4. Rita's "Cool Alerts" text messages state: "Ur fav flavors avail 2day at Ritas of [location] [Flavor] is available today! Reply STOP 2 cancel."

5. Rita's did not provide consumers clear and conspicuous disclosure of the consequences of providing Rita's their phone number for Cool Alerts, *i.e.* that the consumer agrees unambiguously to receive automated text messages from or on behalf of Rita's.

6. Moreover, Rita's wholly disregards consumers' requests for the Cool Alerts text messages to stop. Indeed, Rita's continues to send consumers its Cool Alerts even after consumers text "STOP" as instructed by the Cool Alerts messages.

7. Rita's provides consumers no option on its Cool Alerts website to remove their numbers from the Cool Alerts messages. The inability to opt out of receiving messages is critical to consumers like Plaintiff who never provided Rita's its number in the first place.

8. The telemarketing messages were sent to consumers' cell phones by or on behalf of Rita's using a fully automated system. The messages were unauthorized and not sent for emergency purposes. Accordingly, Defendant's messages violated the TCPA.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331. *Mims v. Arrow Fin. Serv., LLC*, 132 S.Ct. 740, 751-53 (2012).

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Defendant Rita's resides in this District and because a substantial part of the events giving rise to the claim occurred in this District.

## PARTIES

11. Plaintiff is, and at all times mentioned herein was, an adult individual residing in Fort Pierce, Florida, and is a "person" as defined by 47 U.S.C. § 153(39).

12. Rita's is a Delaware limited liability company with its headquarters located at 1210 Northbrook Drive, Trevose, Pennsylvania, and is a "person" as defined by 47 U.S.C. § 153(39).

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

13. The TCPA regulates, among other things, the use of automated telephone dialing systems ("ATDS").

14. 47 U.S.C. § 227(a)(1) defines an ATDS as equipment having the capacity–

   (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and

   (B) to dial such numbers.

15. Specifically, 47 U.S.C. § 227(1)(A)(iii) prohibits any call using an ATDS to a cellular phone without prior express consent by the person being called, unless the call is for emergency purposes.

16. The FCC has clarified that text messages qualify as "calls" under the TCPA:

> We affirm that under the TCPA, it is unlawful to make any call using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number. Both the statute and our rules prohibit these calls, with limited exceptions, "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other common carrier service, or any service for which the party is charged." **This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service.**

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd. 14014, 14115 (July 3, 2003 (emphasis supplied)); *see Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 269 n.2 (3d Cir. 2013).

17. Further, the FCC has clarified that for telemarketing calls,

> "[A] consumer's written consent . . . must be signed and be sufficient to show that the consumer: (1) received 'clear and conspicuous disclosure' of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at the telephone number the consumer designates."

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) ("2012 FCC Order").

## ALLEGATIONS APPLICABLE TO ALL COUNTS

18. In or around February of 2015, Rita's began placing text messages to Plaintiff's cellular telephone number, 561-xxx-5315. True and correct copies of the text messages received by Plaintiff from Rita's are produced below:



19. Rita's messages stated that Plaintiff could "Reply STOP [to] cancel" the messages. Plaintiff repeatedly responded "STOP." Rita's continued to send Plaintiff the unwanted text messages despite knowing it had no consent to do so.

20. Plaintiff emailed Rita's in an attempt to get the text messages to stop. She continued to receive text messages after her email.

21. Plaintiff never provided Rita's with her cell phone number or her prior express written consent to call her cell phone number with automated text messages.

22. Rita's Cool Alerts website[1] does not provide consumers clear and conspicuous

---

[1] See http://www.ritasfranchises.com/stores/store.cfm?store=1514&p=fod (last visited June 5, 2015).

disclosure of the consequences of providing Rita's their phone number for Cool Alerts, *i.e.* that the consumer agrees unambiguously to receive automated text messages from or on behalf of Rita's.

23. Nor does Rita's Cool Alerts website provide a way for consumers to opt out of receiving its text messages.

24. The text messages sent to Plaintiff's cellular phone by Rita's advertise the availability of Rita's products and thus constitute 'telemarketing.'

25. The text messages sent to Plaintiff's cellular phone by Rita's were made with an ATDS as defined by 47 U.S.C. § 227(a)(1) and the FCC in that the system used to place the texts did so automatically, using a list or database of telephone numbers and dialed or called such numbers without human intervention.

26. The telephone number messaged by Rita's was assigned to a cellular telephone service for which Plaintiff incurs charges for incoming messages pursuant to 47 U.S.C. § 227(b)(1).

## CLASS ACTION ALLEGATIONS

### A. The Class

27. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and all others similarly situated.

28. Plaintiff represents, and is a member of the following classes:

**Class 1: All persons within the United States who did not provide Defendant clear and conspicuous prior express written consent to send automated telemarketing text messages and who received one or more automated telemarketing text messages, from or on behalf of Defendant, to said person's cellular telephone, made through the use of any automatic telephone dialing**

system within the four years prior to the filing of the Complaint.

**Class 2**: **All persons within the United States who, after notifying Defendant that it no longer wished to receive automated telemarketing text messages received one or more text messages, from or on behalf of Defendant, to said person's cellular telephone, made through the use of any automatic telephone dialing system within the four years prior to the filing of the Complaint.**

29. Defendant and its employees or agents are excluded from the Classes. Plaintiff does not know the number of members in the Classes, but believes the class members number in the several thousands, if not more. Thus, this matter should be certified as a class action to assist in the expeditious litigation of this matter.

30. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Classes, and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to modify or expand the Class definitions to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

**B. Numerosity**

31. Upon information and belief, Defendant sent text messages to cellular telephone numbers of thousands of consumers throughout the United States without their prior express consent. The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

32. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's records.

**C. Common Questions of Law and Fact**

7

33. There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members. These questions include:

    a. Whether Defendant sent non-emergency text messages to Plaintiff and Class members' cellular telephones using an ATDS;

    b. Whether Defendant can meet its burden of showing they obtained prior express consent to send each message;

    c. Whether Defendant's conduct was knowing and/or willful;

    d. Whether Defendant is liable for damages, and the amount of such damages; and

    e. Whether Defendant should be enjoined from such conduct in the future.

34. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely sends automated text messages to telephone numbers assigned to cellular telephone services without prior express consent is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### D. Typicality

35. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### E. Protecting the Interests of the Class Members

36. Plaintiff will fairly and adequately protect the interests of the Classes and has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor his counsel has any interests which might cause them not to

vigorously pursue this action.

### F. Proceeding Via Class Action is Superior and Advisable

37. A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecutions of separate claims against Defendant is small because it is not economically feasible for Class members to bring individual actions.

38. Management of this class action is unlikely to present any difficulties. Several courts have certified classes in TCPA actions. These cases include, but are not limited to: *Mitchem v. Ill. Collection Serv.*, 271 F.R.D. 617 (N.D. Ill. 2011); *Sadowski v. Med1 Online, LLC*, 2008 WL 2224892 (N.D. Ill., May 27, 2008); *CE Design Ltd. V. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009); *Lo v. Oxnard European Motors, LLC*, 2012 WL 1932283 (S.D. Cal., May 29, 2012).

## COUNT I
## Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*

39. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

40. Defendant sent multiple automated text messages to cellular numbers belonging to Plaintiff and the other members of the Classes without their prior express consent.

41. Each of the aforementioned messages by Defendant constitutes a violation of the TCPA.

42. Plaintiff and the Classes are entitled to an award of $500.00 in statutory damages for each message sent in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

43. Additionally, Plaintiff and the Classes are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

## COUNT II
## Knowing and/or Willful Violations of the
## Telephone Consumer Protection Act,
## 47 U.S.C. § 227, *et seq.*

44. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

45. Defendant knowingly and/or willfully sent multiple automated text messages to cellular numbers belonging to Plaintiff and the other members of the Classes without their prior express consent.

46. Each of the aforementioned messages by Defendant constitutes a knowing and/or willful violation of the TCPA.

47. As a result of Defendant's knowing and/or willful violations of the TCPA, Plaintiff and the Classes are entitled to an award of treble damages up to $1,500.00 for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

48. Additionally, Plaintiff and the Classes are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant Plaintiff and the Classes the following relief against Defendant as follows:

1. Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;
2. Statutory damages of $500.00 for each and every call in violation of the TCPA

pursuant to 47 U.S.C. § 227(b)(3)(B);

3. Treble damages of up to $1,500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C);
4. An award of attorneys' fees and costs to counsel for Plaintiff and the Classes; and
5. Such other relief as the Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: June 19, 2015

Respectfully submitted,

By: /s/ Jody B. Burton
Attorney Bar No.: 71681
Attorney for Plaintiff Sherry Brown
LEMBERG LAW, L.L.C.
1100 Summer Street, Third Floor
Stamford, CT 06905
Telephone: (203) 653-2250 ext. 5501
Facsimile:  (203) 653-3424
Email: jburton@lemberglaw.com