**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHERRY BROWN, on her own** | : | |
| **behalf and on behalf of all others** | : | **CIVIL ACTION NO: 15-CV-3509-TJS** |
| **similarly situated.** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **RITA'S WATER ICE FRANCHISE** | : | |
| **COMPANY, LLC** | : | |
| | : | |
| **Defendants.** | : | |

**DEFENDANT'S MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS AND/OR STRIKE**

**I.     Introduction**

Plaintiff Sherry Brown ("Plaintiff" or "Brown") brings this case as a putative nationwide class action under the Telephone Consumer Protection Act ("TCPA").  Brown's factual allegations about her personal experience are simple: Defendant Rita's Water Ice Franchise Company, LLC ("Rita's") allegedly sent her Cool Alerts text messages—which are notifications alerting customers when their selected favorite flavors are available at their local Rita's store— even though she did not provide Rita's with her wireless phone number.  Brown also claims that she continued to receive Cool Alerts texts after she attempted to opt-out by texting "stop." According to Plaintiff, this violated the TCPA.

Plaintiff, however, has not limited her individual claim to her alleged personal experience, nor does she limit her class claims to persons with experiences similar to hers. Instead, she reaches into completely unrelated conduct, claiming that that the sign up webpage for Rita's Cool Alerts (a website Brown claims she never used since she alleges she didn't sign

up for Cool Alerts) does not satisfy the TCPA's consent requirement.  She makes this claim in order to support an allegation that every Cool Alerts text message sent by Rita's since July 2011 violated the TCPA. Plaintiff then purports to assert class claims on behalf of a class that includes not just people like her—who allegedly did not sign up for Cool Alerts, or who allegedly attempted to opt-out unsuccessfully—but all persons who received a text message from Rita's after signing up on the Cool Alerts website since July 2011.  Unlike Brown, these people, however, actively enrolled in the Cool Alerts program and wanted to receive the texts.  Their experiences are completely different than the unique fact pattern Brown alleges.

Plaintiff's individual claim should be dismissed or limited for two reasons.  First, Brown lacks standing to assert claims based on the Cool Alerts sign-up webpage.  Therefore, any claims based on allegedly defective consent language on that page must be dismissed. Second, Brown has alleged no facts to support her conclusory allegation that the Cool Alerts texts she received were sent via an autodialer.  Therefore, her claim amounts to nothing more than speculation and falls short of satisfying Rule 8.

Plaintiff's class claims must also be stricken.  First, the Court should strike Brown's class claims because she has pled improper fail-safe classes that cannot, as a matter of law, satisfy Rule 23.  Second, the Court should strike the class allegations to the extent they include individuals who—unlike Brown—affirmatively signed up for Cool Alerts on the website and never attempted to opt-out (or opted out successfully).  Brown lacks standing to assert these claims.  In addition, class claims based on the Cool Alerts sign-up webpage fail as a matter of law because the Cool Alerts sign up webpage's provided Rita's with prior express written consent. Indeed, the page's sole purpose is to allow consumers to have a way to voluntarily

provide their contact information, select their favorite flavors, and tell Rita's how they would like to be contacted when their favorite flavors are available.

The Court should therefore strike Plaintiff's class claims and dismiss her individual claims as related to the Cool Alerts sign-up webpage.

## II.     Factual Background

### A.     Consumers expressly consent to receive Cool-Alerts text messages.

Rita's is the franchisor of the Rita's Ice-Custard-Happiness chain of Italian ice and custard shops throughout the United States. Compl. ¶ 3.  Each Rita's location has different flavors of custard and Italian ice available at any given time. *Id.* ¶¶ 3-4.  To provide consumers with a simple and easy way of finding out when their favorite flavors are available at their local stores, Rita's operated the Cool-Alerts program. *Id.* ¶ 3.  Cool Alerts are notices Rita's sent by either email or text message (or both), depending on the consumer's selected preference, letting the consumer know that the favorite flavors the consumer specifically identified and selected when signing up are then available at the specific Rita's location they identified and chose when signing up.  *Id.*

As the Complaint alleges, consumers voluntarily sign up for Cool Alerts on Rita's website. *Id.* ¶ 22 & n. 1. To sign up, a consumer first goes to the webpage for a specific Rita's location and then clicked one of the "Join Cool Alerts" links.  *See* Rita's of Bridgeport Home Page (attached as to R. Seward Declaration as Exhibit 1).[1] Clicking ones of these links directed

---

[1] The Court can consider the Rita's Cool Alerts website because it is specifically referenced in the Complaint and relied on by Plaintiff when asserting her claim. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.").

the consumer to a sign up webpage that listed the name of the Rita's location at the top. As the

Complaint alleges, the webpage that the consumer viewed looks like the following:

Welcome to the Bridgeport Rita's in Bridgeport, CT 06610!          http://www.ritasfranchises.com/stores/store.cfm?store=1514&p=fod



Compl. ¶ 22 n. 1; Rita's of Bridgeport Sign-up Page (attached to R. Seward Declaration as Exhibit 2).

As the above screenshot shows, the webpage said in large font at the top "SIGN ME UP FOR COOL ALERTS: Favorite Flavors of the Day." *Id.* The sign-up page required the consumer to enter his first and last name, e-mail address and/or mobile telephone number and carrier (depending on the desired mode of receiving the Cool Alerts), and his favorite flavors. To receive Cool Alerts by text message, the consumer had to then select "text" or "both" from a drop down menu titled "Alert Type, Receive Emails, Texts, or Both." *Id.* The page then included a number of disclosures, including that "due to size limitations, up to three flavors will be sent in the text alert" and "**By signing up below, I give Rita's permission to contact me about news and offers.** . . . Please note that you must be at least 13 years old to sign up for text and/or email messages. Standard text rates applies." *Id.* (emphasis added).  Finally, the consumer had to go through a security check (to prevent spam attacks) and click a button titled "Sign me up!" to complete the enrollment process.  *Id.*  In short, anyone who went to the trouble of locating and filling out this webpage, inputting his name, inputting his phone number twice, inputting his mobile provider, specifically selecting the flavor or flavors for which he wanted to be notified of availability, choosing to receive the alerts via text message, and performing a verification step and finally clicking "sign me up" undoubtedly knew that he was consenting to receive text messages from Rita's.

### B.    Ms. Brown's specific claims do not involve the Cool Alerts website.

Although the Complaint includes general allegations regarding the sufficiency of the Cool Alerts sign up webpage and Plaintiff seeks to represent a class made up mostly of consumers who signed up on the Cool Alerts webpage, Compl. ¶¶ 3-5, 22-23, 37, Plaintiff does

not allege that she ever viewed the Cool Alerts webpage, enrolled in Cool Alerts on it, or otherwise had any contact with Rita's. *Id.*  Rather, the only facts Plaintiff pleads regarding her personal experience is that she "never provided Rita's with her phone number," Rita's began sending her text messages in February 2015, she "repeatedly responded 'STOP'" to those messages,  and Rita's still continued to send her text messages.  *Id.* ¶ 18-21.  Thus, based on Plaintiff's factual allegations, her individual claim is that Rita's violated the TCPA by texting her out of the blue and then continuing to do so after she texted back "stop."

      **C.**    **Plaintiff's causes of action and the alleged classes.**

      Plaintiff asserts two causes of action. First, Count I alleges that Rita's negligently violated the TCPA by sending her "automated text messages" "without [her] prior express consent." Compl. ¶¶ 39. Count II is identical to Count I, except that it alleges Rita's willfully violated the TCPA. *Id.* ¶ 45.

      Plaintiff seeks to represent the following two putative classes:

> Class 1: All persons within the United States who did not provide Defendant clear and conspicuous prior express written consent to send automated telemarketing text messages and who received one or more automated telemarketing text messages, from or on behalf of Defendant, to said person's cellular telephone, made through the use of any automatic telephone dialing system within the four years prior to filing of the Complaint; and

> Class 2:All persons within the United States who, after notifying Defendant that it no longer wished to receive automated telemarketing text messages, received one or more text messages, from or on behalf of Defendant, to said person's cellular telephone, made through the use of any automatic telephone dialing system within the four years prior to filing of the Complaint.

*Id.* ¶ 28. To avoid confusion, Rita's will refer to Class 1 as the "Allegedly Defective Consent Class" and Class 2 as the "Stop Class."

**III.     The Court should dismiss Counts I and II.**

**A.     Motion to Dismiss Standard**

Under Fed. R. Civ. P. 12(b)(1), a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim. "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States,* 486 F.3d 806, 810 (3d Cir. 2007). In evaluating a Rule 12(b)(1) motion, a court must first determine whether the movant presents a facial or factual attack. *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977). In reviewing a facial challenge, which contests the sufficiency of the pleadings, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elec. Inc. v. United States,* 220 F.3d 169, 176 (3d Cir. 2000). In evaluating whether a complaint adequately pleads the elements of standing, courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in the Supreme Court's Opinion in *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  After *Iqbal*, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. *Id.* at 1949; *see also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  Applying the principles of *Iqbal* and *Twombly*, the Third Circuit in *Santiago v. Warminster Twp.,* 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that district

courts in this Circuit must conduct in evaluating whether allegations in a complaint survive a

12(b)(6) motion to dismiss.  629 F.3d at 130; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203,

210 (3d Cir. 2009) (applying the principles of *Iqbal* and articulating a two-part test).

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a
> claim." Second, the court should identify allegations that, "because they are no more
> than conclusions, are not entitled to the assumption of truth." Finally, "where there
> are well-pleaded factual allegations, a court should assume their veracity and then
> determine whether they plausibly give rise to an entitlement for relief."

*Santiago*, 629 F.3d at 130 (quoting *Iqbal*, 129 S. Ct. at 1947, 1950).  While a district court must

accept all of the complaint's well-pleaded facts as true, a complaint must do more than allege a

plaintiff's entitlement to relief—it must "show" such an entitlement with its facts.  *Fowler*, 578

F.3d at 210-11 (*citing Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 234-35 (3d Cir. 2008)).

> ## B.   Plaintiff lacks standing to assert claims based on receiving texts after signing-up to receive text messages on the Cool Alerts webpage.

Article III of the Constitution limits the jurisdiction of federal courts to the resolution of

actual "cases" and "controversies."  U.S. Const. Art. III, § 2.  The law of Article III standing is

clear: a plaintiff must assert an injury traceable to the conduct of which the plaintiff complains.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  As explained above, Plaintiff's claims

are not based on her enrolling for Cool Alerts on the sign-up webpage. Indeed, Plaintiff does not

plead that she saw that webpage at any time before filing this lawsuit, enrolled in Cool Alerts

through that webpage, or had any contact with Rita's at all before receiving the text messages.

Thus, because Plaintiff does not plead any facts demonstrating that the Cool Alerts sign-up

webpage caused her an injury-in-fact or that the Cool Alerts website was involved in any way in

her specific experience, she lacks standing to assert claims based on the Cool Alerts website.

In a thinly veiled attempt to avoid this problem, Plaintiff seems to be relying on the

purported injuries to class members to assert a claim based on the sign-up website by generally

alleging that the Cool Alerts sign-up page does not meet the TCPA's consent standard and that her claims are typical of the class claims "as they are all based on the same factual and legal theories." Compl. ¶ 35. That is improper because "[i]t is also well settled that the standing requirement cannot be dispensed with by styling the complaint as a class action." *See, e.g., In re Direxion Shares ETF Trust*, 279 F.R.D. 221, 230 (S.D.N.Y. 2012) (citing *Lewis v. Casey*, 518 U.S. 343, 357 (1996)).  "A rule of procedure, like Rule 23, cannot . . . create standing where standing simply does not exist." *Id.* (citing 28 U.S.C. § 2072(b) (requiring that procedural rules "shall not abridge, enlarge or modify any substantive right.  All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.")).  Indeed, Plaintiff's attempt to base her individual claims on the Cool Alerts sign up webpage is similar to a class representative suing regarding misrepresentations about a product that she did not use or purchase. In that scenario, courts frequently hold that a putative class representative lacks standing to sue regarding products that she did not purchase. *See Leonhart v. Nature's Path Food, Inc.*, No. 5:13-cv-492-EJD, 2014 WL 1338161, at *4 (N.D. Cal. May 20, 2014) (plaintiff lacks standing to bring claims "regarding statements she never saw and products she did not buy.");  *Chin v. General Mills, Inc.*, Civ. No. 12-2150 (MJD/TNL), No. 12-cv-2150 (MJD/TNL), 2013 WL 2420455, at *3 (D. Minn. June 3, 2013); *Dapeer v. Neutrogena Corp.*, --- F. Supp. 3d ----, 2015 WL 1395253, at *3-4 (S.D. Fla. 2015); *Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 537 (D. N.J. 2011).  Because Plaintiff's class claims do not create standing for her to sue regarding the Cool Alerts sign-up page and because she otherwise does not allege any injury to her fairly traceable to that webpage, Counts I and II should be dismissed to the extent that they are based on the Cool Alerts sign-up webpage.

Moreover, even if Plaintiff had standing to assert claims based on the Cool Alerts sign-up page (and she does not), Counts I and II still should be dismissed for failure to state a claim to the extent that the claims are based on the Cool Alerts sign-up page because Plaintiff makes no personal allegations regarding them. While Plaintiff wants to assert such a claim so that she can represent a class that includes individuals who signed up through the Cool Alerts webpage, she "cannot use [a] class action[] device to escape pleading requirements." *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356, 378 (E.D.N.Y. 2010); *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 702 (D.N.J. 2011) ("In class action cases, each individually named plaintiff must satisfy Rule 9(b) independently") (internal quotation omitted).

C.    **The Court must dismiss Counts I and II because Plaintiff fails to adequately plead that the text messages she received were sent with an autodialer.**

To violate the TCPA, the call at issue must be made "using any automatic telephone dialing system." ("ADTS"). 47 U.S.C. § 227(b)(1)(A)(iii). That term is defined as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* at § 227(a)(1). Thus, to state a TCPA claim, Plaintiff must adequately allege that the texts were made with an ATDS as that term is defined. Applying the *Iqbal* pleading standard, courts have repeatedly dismissed TCPA claims where the plaintiff merely relies on conclusory allegations and recitations of the statutory language to plead that the defendant used an ATDS to make the calls at issue. *See Weaver v. Wells Fargo Bank N.A.*, No. 8:15-CV-1247-T-23TGW, 2015 WL 4730572, at *3 (M.D. Fla. Aug. 10, 2015) (holding that the failure to allege facts supporting conclusory allegations that calls were made with an autodialer warranted dismissal); *Speidel v. JP Morgan Chase & Co.*, No. 2:13-cv-852-FtM-29DNF, 2014 WL 582881, at *2 (M.D. Fla. Feb.13, 2014) (merely

alleging that defendant placed calls using "an automatic telephone dialing system" are inadequate because they "merely follow the language of the statute"); *Clayton v. Aaron's Inc.*, No. 3:13-CV-219, 2013 WL 3148174, at *3 (E.D. Va. June 19, 2013) (granting motion to dismiss where plaintiff failed to plead any factual allegations showing that defendant made calls using an autodialer); *Freidman v. Massage Envy Franchising, LCC,* No. 3:12-cv-2962-RBB, 2013 WL 3026641, at *2 (S.D. Cal. June 13, 2013) (holding that the plaintiffs allegations that the defendant's text messages "were placed via an 'automatic telephone dialing system' do nothing more than assert a speculation."); *Johansen v. Vivant, Inc.,* No. 12 C 7159, 2012 WL 6590551, at *3 (N.D.Ill.Dec.18, 2012) ("Use of an ATDS and the pre-recorded nature of the messages are not legal conclusions, they are facts. Still, when a fact is itself an element of the claim, ... it is not sufficient to recite that fact verbatim without other supporting details."); *Ibey v. Taco Bell Corp.,* No. 12-cv-583-H (WVG), 2012 WL 2401972, at *3 (S.D. Cal. June 18, 2012) (finding insufficient the plaintiff's "conclusory" allegation that the defendant "used an ATDS").

Here, Plaintiff does not allege sufficient facts to support its assertion that Rita's used an ADTS to send her text messages. Rather, the Complaint contains the single conclusory allegation that the text messages she received "were made with an ADTS as defined by 47 U.S.C. § 227(a)(1) and the FCC in that the system used to place the texts did so automatically, using a list or database of telephone numbers and dialed or called such numbers without human intervention."  Compl. ¶ 25. However, Plaintiff pleads no facts to support these conclusions or to otherwise establish that the text messages sent to her were done without human intervention or with a machine that dials numbers randomly or sequentially. Such threadbare assertions do not satisfy Rule 8 and the Court should dismiss both counts.

**D.    Plaintiff cannot recover attorney's fees as a matter of law.**

In her request for relief, Plaintiff seeks an order awarding her "attorney's fees and costs." Compl. p. 11. It is a "bedrock principle" that "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2164 (2015); *see also* Fed. R. Civ. P. 23(h) (a court may only award attorney's fees in a certified class action "that are authorized by law or by the parties' agreement."). The TCPA does not allow an award of attorney's fees. 47 U.S.C. § 227; *see, e.g., Haley v. Hughes Network Sys., LLC*, No. 12-CV-1079JTC, 2013 WL 5937007, at *3 (W.D.N.Y. Nov. 1, 2013) (refusing to award attorney's fees under TCPA). Thus, the Court should dismiss Plaintiff's prayer for relief to the extent that it seeks attorney's fees.

**IV.    The Court should strike Plaintiff's class claims.**

   **A.    Standard for a motion to strike.**

Like any other claim, a court may eliminate class allegations and a request for class certification based on the pleadings alone where the "complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *See Landsman & Funk PC v. Skinder–Strauss Assocs.*, 640 F.3d 72, 93 n. 30 (3d Cir. 2011); *Zarichny v. Complete Payment Recovery Servs., Inc.*, No. CIV.A. 14-3197, 2015 WL 249853, at *2 (E.D. Pa. Jan. 21, 2015) (quoting *McPeak v. S–L Distrib. Co.,* Civ. No. 12-348, 2014 WL 4388562, at *4 (D.N.J. Sept. 5, 2014)) ("'It is only when no amount of discovery or time will allow for plaintiffs to resolve deficiencies in class definitions under Rule 23, that a motion to strike class allegations should be granted.'"); *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 655 (D. Nev. 2009) (quoting *In re Walls*, 262 B.R. 519, 523 (Bankr. E.D. Cal. 2001)) ("'[i]f, as a matter of law, a class cannot be certified . . . , it would be a waste of the parties' resources and judicial resources to conduct discovery on class certification.'").

While parties have raised such arguments in Rule 12(b)(6) or Rule 12(f) motions, courts agree that, however raised, the court should eliminate class claims where "it is obvious from the pleadings that no class action can be maintained." *See, e.g., In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices, & Relevant Prods. Liab. Litig.*, 275 F.R.D. 270, 274 (S.D. Ill. 2011); *DeBose v. Fedex Corp.*, No. 08-cv-7042 (AKH), 2009 U.S. Dist. LEXIS, at *5 (S.D.N.Y. June 2, 2009) (granting motion to strike class allegations where plaintiff could not succeed on them as a matter of law); *Shabaz v. Polo Ralph Lauren Corp.*, 586 F. Supp. 2d 1205, 1211 (C.D. Cal. 2008) (reviewing motion to strike class claims using Rule 12(b)(6) standard).

### A. The Court should strike the class allegations because Plaintiff seeks to certify "fail-safe" classes.

The Court must strike the allegations regarding both the Allegedly Defective Consent Class and Stop Class because they are improper fail-safe classes. A fail-safe class is "one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 825 (7th Cir. 2012). Failsafe classes, which only include those who are "entitled to relief," are improper because they "shield the putative class members from receiving an adverse judgment. Either the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment." *Randleman v. Fid. Nat. Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011). The Third Circuit has suggested that it agrees with this view, *see Byrd v. Aaron's Inc.*, 784 F.3d 154, 167 (3d Cir. 2015) (citing *Messner*'s discussion of fail-safe classes with approval), and district courts in this Circuit have stricken class claims when they allege a fail-safe class. *See Zarichny,* 2015 WL 249853 (granting motion to strike TCPA class claims where class, which was defined as individuals who were called "without prior consent," was an improper fail-sale class); *Bell v. Cheswick Generating Station, Genon Power Midwest, L.P.*, Civ. Action No. 12-929, 2015 WL

401443, at *7 (W.D. Pa. Jan. 28, 2015) (granting motion to strike class allegations where class definition required class members to have suffered "invasion" of property by noxious fumes and incurred "similar damages" to their property).

The TCPA prohibits making a call "using any automatic telephone dialing system" ("ATDS") to "any telephone number assigned to a . . . cellular telephone service" unless the caller has the "the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). Thus, in the TCPA context, a number of courts have held that class definitions hinging on proof of consent, including classes defined as those *"who did not provide prior express written consent"* or "who had expressly revoked any consent previously given," are improper fail-safe classes because they consist "solely of persons who can establish that defendant violated the TCPA." *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-CV-846, 2014 WL 1814076, at *8 (S.D. Ohio May 7, 2014) (granting motion to strike TCPA class claims); *see also Zarichny,* 2015 WL 249853 (granting motion to strike TCPA class allegations where the alleged class included individuals who were called "without prior consent"); *Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536, 539 (E.D. Mich. 2015) (granting motion to strike TCPA class allegations where class definition was as impermissible fail-safe class in that it included persons "who did not provide his or her phone number to DCI or the creditor as an authorized contact number for the alleged debt on which DCI attempted to collect."); *Lindsay Transmission, LLC v. Office Depot, Inc.,* No. 4:12–CV–221 CEJ, 2013 WL 275568, at *4 (E.D. Mo. Jan. 24, 2013) (granting motion to strike TCPA fax claim because "[i]n this case, the proposed class includes only those persons to whom defendant sent faxes without prior consent and with whom defendant did not have an established business relationship. Thus, the proposed class consists solely of persons who can establish that defendant violated the TCPA.").

Here, the Allegedly Defective Consent Class includes only individuals "who did not provide Defendant clear and conspicuous prior express written consent . . . " Compl. ¶ 28. Similarly, the Stop Class consists of individuals who "notif[ied] Defendant that it (sic) no longer wished to receive automated telemarketing text messages," but then "received one or more text messages, from . . . Defendant." *Id.*  On their face, both classes are made up of solely of people who can establish Rita's violated the TCPA's by sending them text messages without consent. 47 U.S.C. § 227(b)(1)(A)(iii) ; 47 C.F.R. § 64. § 64.1200(a)(2).  If Rita's proves that some or all of the putative class members provided consent (or did not revoke this consent), then those individuals are not part of the class and are not bound by the outcome in this case. Plaintiff should not be allowed to set up this kind of heads I win, tails I don't lose situation. The Allegedly Defective Consent Class and the Stop Class are each fail-safe classes, and Plaintiff's class allegations should be stricken.

### C.  The Court should strike the Allegedly Defective Consent Class because of Plaintiff's lack of standing.

Standing as it relates to class allegations is a threshold issue that should be decided at the outset of the case. *See In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 64 F. Supp. 3d 665, 693 (E.D. Pa. 2014) (agreeing with previous court that held "standing was a threshold inquiry that must be addressed prior to class certification."); *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 263 F.R.D. 205, 211 (E.D. Pa. 2009).  Moreover, it is well settled that if a plaintiff lacks standing to bring a claim, then she may not seek relief for that claim on belief of other members of the putative class. *See, e.g., Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 361 (3d Cir. 2013) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.");

*Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 135 (3d Cir. 2000) ("For instance, a plaintiff who lacks the personalized, redressable injury required for standing to assert claims on his own behalf would also lack standing to assert similar claims on behalf of the class."); *Wooden v. Bd. of Regents of Univ. Sys. Of Ga.*, 247 F.3d 1262, 1288 (11th Cir. 2001) ("[J]ust as a plaintiff cannot pursue an individual claim unless he proves standing, a plaintiff cannot represent a class unless he has standing to raise the claims of the class he seeks to represent."); *In re McNeil Consumer Healthcare Mktg. & Sales Practices Litig.*, 877 F. Supp. 2d 254, 270 (E.D. Pa. 2012).

As explained above, Plaintiff lacks standing to bring any individual claims relating to an alleged defect in the consent language on the Cool Alerts sign-up webpage, as she does not allege visiting the webpage or even signing-up for Cool Alerts. Thus, she similarly lacks standing to represent any member of the Allegedly Defective Consent Class who signed up for Cool Alerts on the webpage and never revoked that consent. Thus, the Court should strike the Allegedly Defective Consent Class allegations and require Plaintiff to replead a new class definition that does not include these individuals.

D.   **Any class claim based on the Cool Alerts sign-up webpage providing Rita's with defective consent fails as a matter of law.**

In addition to the problems of standing and the fail-safe class definitions, the Allegedly Defective Consent Class must be stricken to the extent it seeks to include those individuals who signed up on the Cool Alerts website because the sign-up page satisfies the TCPA's consent standard.  As explained above, the TCPA prohibits making a call "using any automatic telephone dialing system" ("ATDS") to "any telephone number assigned to a . . . cellular telephone service" unless the caller has the "the prior express consent of the called party." 47 U.S.C. §

227(b)(1)(A)(iii). The Federal Communication Commission ("FCC") has prescribed rules, which have varied over time, regarding what kind of consent is necessary to avoid TCPA liability.

     1.    <u>October 16, 2013 Consent Standard</u>

Since October 16, 2013,[2] the FCC's rules have prohibited calls made with an ATDS that "introduce[ ] advertising or constitute[ ] telemarketing,"[3] unless the caller has obtained the "prior express written consent" of the person being called. 47 C.F.R. § 64.1200(a)(2). The FCC defines "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8). Moreover, the rules say that this written agreement must have a "clear and conspicuous disclosure" informing the person signing that:

> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
>
> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

47 C.F.R. § 64.1200(f)(8).

---

[2] For an explanation of why this requirement did not take effect until October 16, 2013, *see Telephone Consumer Protection Action of 1991*, Final Rule, 77 FR 34233 (June 11, 2012), *Telephone Consumer Protection Act of 1991, Final Rule and Announcement of Effective Date*, 77 FR 63240 (Oct. 16, 2012).

[3] For purposes of this motion only, Rita's does not dispute that the Cool Alerts text messages meet the FCC's definition of advertising or telemarketing.

While this section can be interpreted to mean that a written agreement only provides the necessary consent if it tracks the exact language of § 64.1200(f)(8)(A)-(B), the FCC's commentary regarding the meaning of "prior express written consent" does not support that conclusion. When the FCC announced the "prior express written consent" standard, it explained that it is meant to mirror the requirements regarding prerecorded calls found in the Federal Trade Commission's Telemarketing Sales Rules ("TSR"). *In re Rules & Reg's Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012). The FCC's intent was to ensure that callers only had to comply with one set of standards. *Id.* at 1839-40.

The TSR does not require any explicit form of disclosure—rather it simply mandates that the written agreement make clear that its purpose is to "authorize the seller to place prerecorded calls," and "evidences willingness of the recipient of the call to receive calls that deliver prerecorded messages by or on behalf of a specific seller." 16 C.F.R. § 310.4(b)(1)(v)(A). The TSR does not require any statements about whether a purchase is necessary. Rather, the TSR merely says that the agreement must be "obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service." *Id.*

In light of the TSR's text and the purpose of the rule change, the FCC explained that "consistent with" the TSR, the prior express written consent needed to satisfy the TCPA:

> must be signed and **be sufficient to show** that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement **must be obtained** "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service."

*In re Rules & Reg's Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (emphasis added).

Here, the Cool-Alerts sign-up webpage satisfied the prior express written consent standard as interpreted by the FCC. The exclusive reason a consumer went to the Cool Alerts sign up page is to opt-in to receiving text messages or emails about the availability of their favorite flavors at their local stores.  To receive Cool Alerts via text message, a consumer had to enter his name, telephone number twice, e-mail address, mobile carrier, and affirmatively select the "text" option.  The webpage made clear that the consequence of clicking "Sign me up" (i.e., providing an electronic signature) was that the consumer would receive text messages about the availability of product flavors the consumer selects. Moreover, signing up for Cool Alerts was obviously not a condition of making a purchase.  Opting in to receive Cool Alerts texts was not buried in the fine print of a purchase order; instead consumers affirmatively go to the Cool Alerts page for the exclusive purpose of signing up to receive the text or email alerts. In short, the Cool Alert's sign-up page undoubtedly evidences that consumers consented in writing to receiving text messages about the availability of product flavors.

Indeed, to interpret the rule as requiring anything more than what Rita's has done or what the FCC in 2012 explained was required would lead to an absurd result. It would mean that a business would violate the TCPA by sending a text message to a consumer when (1) the consumer previously agreed in writing to receive a text message, (2) the agreement made clear the consumer was agreeing to receive text messages, and (3) the agreement did not require a purchase. Moreover, interpreting the rule to require anything more than what Rita's did creates a number of constitutional issues, including whether § 64.1200(f)(8) violates the First Amendment as applied by requiring Rita's to make disclosures using specific language that are not reasonably related to the regulation's purpose. *See, e.g., Dwyer v. Campbell*, 762 F.3d 275 (3d Cir. 2014) (explaining that disclosure requirements must be "reasonably related to state's interest in

preventing deception of consumers" and that "unduly burdensome disclosure requirements might offend the First Amendment by chilling protected commercial speech.") (*citing Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626 (1985)) . It would also raise concerns about whether the TCPA unconstitutionally violates Rita's due process rights by subjecting it to statutory penalties for sending consented to text messages that, when aggregated, would put it out of business. *See Maryland v. Universal Elections, Inc.*, 862 F. Supp. 2d 457, 465 (D. Md. 2012) *aff'd*, 729 F.3d 370 (4th Cir. 2013) ("While the TCPA's damages provisions appear constitutional on their face, damages may become unconstitutional as applied in an individual case."); *Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at *5 (N.D. Cal. Apr. 15, 2015) (explaining that an award of statutory damages to a TCPA class "might raise due process concerns"); *see also Parker v. Time Warner Entm't Co., L.P.*, 331 F.3d 13, 22 (2d Cir. 2003) (musing that a class action combined with uncapped statutory damages could create due process concerns and noting that the mere possibility of such damages have an "*in terrorem* effect on defendants, which may induce unfair settlements."). Against this backdrop, the principle of constitutional avoidance supports interpreting the FCC's regulations in a way that finds Rita's had prior express written consent to send the text messages. *See, e.g., Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988) ("where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress."). The Court should therefore conclude that Plaintiff's class cannot include anyone who signed up for Cool Alerts on the sign-up webpage and took no other action.

2.     The Pre-October 16, 2013 Consent Standard.

Before the "prior express written consent" standard went into place on October 16, 2013, the applicable consent standard was merely that the caller needed "prior express consent" to send text messages using an ADTS to a wireless phone number. 47 C.F.R. § 64.1200(a)(1) (2013). The FCC explained under that standard, "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary. Hence, telemarketers will not violate our rules by calling a number which was provided as one at which the called party wishes to be reached." *In Re Rules & Reg's Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752, 8769 (1992); *In re Rules & Reg's Implementing the Tel. Consumer Prot. Act of 1991,* 23 F.C.C.R. 559, 564 (2008) ("the provision of a cell phone number to a creditor, *e.g.,* as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt.").  Applying this standard, numerous courts have held that merely providing a cell phone number, even where there was not explicit authorization to send text messages, satisfies the pre-October 16, 2013 consent standard.  *See Van Patten v. Vertical Fitness Grp., LLC*, 22 F. Supp. 3d 1069, 1073 (S.D. Cal. 2014) (collecting multiple cases standing for this proposition); *see also Elkins v. Medco Health Solutions, Inc.*, No. 4:12CV2141 TIA, 2014 WL 1663406, at *7 (E.D. Mo. Apr. 25, 2014) (reaching same result); *Wills v. Optimum Outcomes, Inc.*, No. 1:13-CV-26-PMW, 2014 WL 220707, at *4 (D. Utah Jan. 21, 2014) (same).

Here, the Cool-Alerts sign-up webpage required consumers to provide their telephone number, select that they wanted to receive texts, provided disclosures about the texts that they were going to receive, and required consumers to click a button saying "sign me up." There is no

doubt that Rita's had prior express consent to send these individuals texts and any claims related to the sign-up webpage from that time period fail as a matter of law. The Court should therefore conclude that Plaintiff's class cannot include anyone who signed up for Cool Alerts on the sign-up webpage before October 16, 2013 and took no further action.

    **Conclusion**

For these reasons, the Court should dismiss counts I and II in part and sound strike Plaintiff's class claims.

Dated:  August 24, 2015                          Respectfully submitted,

                                            By:     */s/ Constantine T. Fournaris*
                                                      Constantine T. Fournaris
                                                      Wiggin and Dana LLP
                                                      50 S. 16th Street
                                                      Two Liberty Place, Suite 2925
                                                      Philadelphia, PA  19102
                                                      Telephone: (215) 988-8311
                                                      cfournaris@wiggin.com

                                                      *Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 24th day of August 2015, Constantine T. Fournaris, a member of the firm of Wiggin and Dana LLP, counsel for Defendant Rita's Water Ice Franchise Company, LLC, electronically filed the foregoing Memorandum in Support of Motion to Dismiss and/or Strike with the Clerk of the United States District Court for the Eastern District of Pennsylvania using the CM/ECF System which sent notification of such filing to the following Filing User at the following e-mail address:

> Jody Burton
> Stephen Taylor
> Lemberg Law, L.L.C.
> 1100 Summer Street, Third Floor
> Stamford, CT 06905
> Telephone:  (203) 653-2250
> jburton@lemberglaw.com
> staylor@lemberglaw.com

Dated: August 24, 2015          By:     /s/ *Constantine T. Fournaris*
                                        Constantine T. Fournaris (PA #63902)
                                        Two Liberty Place
                                        50 South 16th Street, Suite 2925
                                        Philadelphia, PA  19102
                                        Phone: 215.988.8311
                                        Fax: 215.988.8344
                                        Email:  cfournaris@wiggin.com
                                        Attorney for Rita's Water Ice Franchise Company,
                                        LLC