## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Sherry Brown and Ericka Newby, *on their own behalf and on behalf of all others similarly situated,*<br><br>   Plaintiffs,<br>   v.<br><br>Rita's Water Ice Franchise Company LLC, *a Pennsylvania Limited Liability Company,*<br><br>   Defendant. | Civil Action No.: 2:15-cv-03509(JTS)<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

For this Class Action Complaint, the Plaintiffs, by and through their undersigned counsel, pleading on their own behalf and on behalf of others similarly situated, state as follows:

## INTRODUCTION

1.      Plaintiffs Sherry Brown ("Brown") and Ericka Newby ("Newby") (collectively the "Plaintiffs") bring this Class Action Complaint against Defendant Rita's Water Ice Franchise Company LLC ("Rita's") to stop Rita's practice of systematically, and in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "TCPA"), transmission of text message calls to cellular telephones after consumers have revoked their consent to receive them and to obtain redress for all persons injured by such conduct. Plaintiffs Brown and Newby, for their Class Action Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

2.      Wireless spam is a growing problem in the United States. In April 2012, the Pew Research Center found that 69% of texters reported receiving unwanted spam text messages,

while 25% reported receiving spam texts weekly. http://www.pewinternet.org/fact-sheets/mobile-technology-fact-sheet/ (last visited June 4, 2015); *see also* Nicole Perlroth, Spam Invades a Last Refuge, the Cellphone, N.Y.Times, April 8, 2012, at A1 ("In the United States, consumers received roughly 4.5 billion spam texts [in 2011], more than double the 2.2 billion received in 2009 . . . .").

     3.     Rita's is the franchisor of Rita's Italian ice and custard shops located throughout the United States. In an effort to market its franchisees' products, Rita's set up "Cool Alerts," an automated system whereby it sends consumers text-messages when certain Rita's product flavors are available at their local Rita's establishment.

     4.     Rita's "Cool Alerts" text messages state, essentially uniformly: "Ur fav flavors avail 2day at Ritas of [location] [Flavor] is available today! Reply STOP 2 cancel."

     5.     Rita's did not provide consumers clear and conspicuous disclosure of the consequences of providing Rita's their phone number for Cool Alerts, *i.e.* that the consumer agrees unambiguously to receive automated text messages from or on behalf of Rita's.

     6.     Moreover, Rita's wholly disregards consumers' requests for the Cool Alerts text messages to stop. Indeed, Rita's continues to send consumers its Cool Alerts even after consumers text "STOP" as instructed by the Cool Alerts messages.

     7.     Rita's provides consumers no option on its Cool Alerts website to remove their numbers from the Cool Alerts messages. The inability to opt out of receiving messages is critical to consumers.

     8.     The telemarketing messages were sent to consumers' cell phones by or on behalf of Rita's using a fully automated system. The messages were unauthorized and not sent for

emergency purposes. Accordingly, Defendant's messages violated the TCPA.

## JURISDICTION AND VENUE

9.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

*Mims v. Arrow Fin. Serv., LLC*, 132 S.Ct. 740, 751-53 (2012). Jurisdiction is also appropriate

under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the proposed classes consist

of more than 100 persons, at least one class member is from a state different from the state of the

Defendant (Pennsylvania), and because their claims, in the aggregate, exceed $5,000,000.

Further, none of the exceptions to CAFA jurisdiction apply.

10.      Venue is proper in this District pursuant to 28 U.S.C. § 1391. The Court has

personal jurisdiction over the Defendant, which is registered to do business in the State of

Pennsylvania, regularly conducts business in the State of Pennsylvania and in this district, its

registered agent for service and headquarters are is located in this District, and a substantial part

of the events giving rise to the claims asserted here occurred in this District.

## PARTIES

11.      Plaintiff Brown is, and at all times mentioned herein was, an adult individual and

natural person domiciled and residing in Fort Pierce, Florida.

12.      Plaintiff Newby is and at all times mentioned herein was an adult individual and

natural person domiciled and residing in the State of Virginia.

13.      Rita's is a Delaware limited liability company with its headquarters located at

1210 Northbrook Drive, Trevose, Pennsylvania.

## THE TELEPHONE CONSUMER PROTECTION ACT

14.      The TCPA regulates, among other things, the use of automated telephone dialing

systems ("ATDS").

15.     47 U.S.C. § 227(a)(1) defines an ATDS as equipment having the capacity–

(A)     to store or produce telephone numbers to be called, using a random or sequential number generator; and

(B)     to dial such numbers.

16.     Specifically, 47 U.S.C. § 227(1)(A)(iii) prohibits any call using an ATDS to a cellular phone without prior express consent by the person being called, unless the call is for emergency purposes.

17.     The FCC and courts have clarified that text messages qualify as "calls" under the TCPA:

> We affir m that under the TCPA, it is        unlawful to m ake any call using an automatic telephone dialing system or an ar tificial or prerecorded message to any wireless telephone num ber. Both the st atute and our rules    prohibit these calls, with lim ited exceptions, "to any telephone    number assigned to a paging service, cellular telephone service,   specialized m obile radio  service, or other comm  on carrier service, or any service for which the party is charged." **This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service.**

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd. 14014, 14115 (July 3, 2003 (emphasis supplied)); *see Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 269 n.2 (3d Cir. 2013).

18.     Further, the FCC has clarified that for telemarketing calls,

> "[A] consumer's written consent . . . must be signed and be sufficient to show that the consu  mer: (1) received    'clear an    d conspicuous disclosure' of the consequences of providing the requested consent,     *i.e.*, tha t the con  sumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this info rmation, agrees unambiguously to receive such calls at the telephone number the consumer designates."

4

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) ("2012 FCC Order").

19.     And, where previously provided, the FCC has clarified that consumers "may revoke consent at any time and through any reasonable means." *Declaratory Ruling and Order*, CG Docket No. 02–278, FCC 15-72, ¶ 47 (July 10, 2015).

## ALLEGATIONS APPLICABLE TO PLAINITFF BROWN

20.     In or around February of 2015, Rita's began placing text messages to Plaintiff Brown's cellular telephone number, 561-xxx-5315. True and correct copies of the text messages received by Plaintiff from Rita's are produced below:



21.     Rita's messages stated that Plaintiff could "Reply STOP [to] cancel" the

5

messages.  Plaintiff repeatedly responded "STOP." Rita's continued to send Plaintiff Brown the unwanted text messages despite knowing it had no consent to do so.

22.     Plaintiff emailed Rita's in an attempt to get the text messages to stop. She continued to receive text messages after her email.

23.     Plaintiff never provided Rita's with her cell phone number or her prior express written consent to call her cell phone number with automated text messages.

24.     The text messages sent to Plaintiff Brown's cellular phone by Rita's advertise the availability of Rita's products and thus constitute 'telemarketing.'

25.     The text messages sent to Plaintiff Brown's cellular phone by Rita's were made with an ATDS as defined by 47 U.S.C. § 227(a)(1) and the FCC in that the system used to place the texts did so automatically, using a list or database of telephone numbers and dialed or called such numbers without human intervention.

26.     The telephone number messaged by Rita's was assigned to a cellular telephone service for which Plaintiff incurs charges for incoming messages pursuant to 47 U.S.C. § 227(b)(1).

## ALLEGATIONS APPLICABLE TO PLAINITFF NEWBY

27.     In or around September 2014, Plaintiff Newby signed up with Rita's for their Flavor of the Day text message alerts on the Rita's website http://www.ritasfranchises.com/stores/store.cfm?store=2278&p=fod. As part of that program she provided Defendant her cellular telephone number, her carrier name, and her first and last name. The Rita's website authorization did not contain a clear or conspicuous disclosure that the consumer was consenting to receive robo-texts or text messages sent with the use of Rita's

automated dialing system.

28.     In or around October 2014, Plaintiff Newby wanted the messages to cease and replied STOP as instructed in the Rita's text message.

29.     However, Defendant Rita's continued to send Plaintiff Newby the text message alerts. Newby continued to reply STOP as indicated but Defendants continued to send her text messages.



Figure 1: Sample of one of many text messages to which Plaintiff replied "Stop.".

30.     On November 18, 2014 Plaintiff Newby contacted Rita's and asked Defendant to stop sending her text messages.

31.     After Plaintiff Newby continued to receive text messages from Defendant despite her text message opt out requests and November 18th request, Plaintiff Newby contacted Rita's again on November 23, 2014, to demand that the texts messages cease.

32.     Plaintiff Newby continued to receive text messages from Rita's and has replied to almost every text message for Rita's to "Stop."

33.     On information and belief, Plaintiff has received dozens of commercial text

7

messages from Rita's after asking Rita's to "Stop."

34.     By making unauthorized text message calls as alleged herein, Defendant has caused consumers actual harm. In the present case, a consumer could be subjected to many unsolicited text messages since Defendant systematically fails to properly process consumers' opt out requests.

35.     In order to redress these injuries, Plaintiffs on behalf of themselves and a class of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("47 U.S.C. § 227"), which prohibits unsolicited voice and text calls to cell phones.

36.     On behalf of the Classes, Plaintiffs seek an injunction requiring Defendant to cease all wireless spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

### A. <u>The Classes</u>

37.     Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and all others similarly situated and seek certification of the following two classes:

<u>No Consent Class:</u> All persons in the United States who signed up for Rita's "Cool Message" text alerts and were        shown the same disclosure language regarding text messages as was displayed to Plaintiff Newby, and to whose cellular phones Rita's caused to be sent one or more automated telemarketing text messages from June 22, 2011 to the present.

<u>Replied Stop Class:</u> All persons within the United States who, from June 22, 2011 to the present, received on their cellphone at least one text message from Rita's, replied "Stop" to the text message, and thereafter received at least one additional text message to their same cellphone number, who did not reauthorize Rita's to send them text messages after they replied Stop.

8

38.     Defendant and its employees or agents are excluded from the Classes. Plaintiffs do not know the number of members in the Classes, but they believe that the class members number in the several thousands, if not more. Thus, this matter should be certified as class action to assist in the expeditious litigation of this matter.

39.     This suit seeks damages and injunctive relief for recovery of economic injury on behalf of the Classes, and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to modify or expand the Class definitions to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

**B.   Numerosity**

40.     Upon information and belief, Defendant sent text messages to cellular telephone numbers of thousands of consumers throughout the United States without their prior express consent. The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

41.     The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's records. That is, Defendant's records will show the date range for when the disclosure language used on Rita's website that was shown to Plaintiff Newby was kept on the website. As such, any persons who signed up for text messages during that time period have the same legal rights as Plaintiff Newby with respect to whether that identical disclosure complied with or violated the TCPA's written prior express consent requirements. Likewise, Rita's should have a record of all persons who replied "Stop" and

continued to receive text messages.

C. **Common Questions of Law and Fact & Predominance**

42.     There are several questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members. These questions can be answered in a single stroke for the entire class based on common evidence and include:

       a.    Whether Defendant sent non-emergency text messages to Plaintiff and Class members' cellular telephones using an ATDS;

       b.    Whether Defendant can meet its burden of showing it obtained prior express consent to send each message;

       c.    Whether Defendant honored certain requests to Stop sending messages or whether it serially failed to honor such messages;

       d.    Whether Defendant's conduct was knowing and/or willful;

       e.    Whether Defendant is liable for damages, and the amount of such damages; and

       f.    Whether Defendant should be enjoined from such conduct in the future.

43.     The common questions in this case are capable of generating common answers that will drive the litigation. If Plaintiffs' prevail on the claim that Defendant's disclosure language was inadequate, Plaintiff Newby and the No Consent Class members will have identical claims capable of being efficiently adjudicated and administered in this case. Likewise, if Plaintiffs Brown and Newby prevail on their claims that by responding "Stop" they manifested a clear intent to revoke any consent to call, and yet they continued to receive calls after they responded "Stop" and are thus entitled to damages and injunctive relief, then every member of

10

the Replied Stop class would similarly be entitled to recover statutory damages and injunctive relief.

### D.  Typicality

44.     Plaintiffs' claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### E.  Protecting the Interests of the Class Members

45.     Plaintiff will fairly and adequately protect the interests of the Classes and have retained counsel experienced in handling class actions, particularly claims under the Telephone Consumer Protection Act dealing with text messages and claims involving unlawful business practices. Neither Plaintiffs nor their counsel have any interests that might cause them not to vigorously pursue this action nor any other actual conflicts.

### F.  Proceeding Via Class Action is Superior and Manageable

46.     A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecutions of separate claims against Defendant is small because it is not economically feasible for Class members to bring individual actions.

47.     Management of this class action is unlikely to present any difficulties. Several courts have certified classes in TCPA actions. These cases include, but are not limited to: *Mitchem v. Ill. Collection Serv.*, 271 F.R.D. 617 (N.D. Ill. 2011); *Sadowski v. Med1 Online, LLC*, 2008 WL 2224892 (N.D. Ill., May 27, 2008); *CE Design Ltd. V. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009); *Lo v. Oxnard European Motors, LLC*, 2012 WL 1932283 (S.D.

Cal., May 29, 2012). *Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-cv-01413(W-AJB), 2008 WL

4155361, at *8 (S.D. Cal. Sept. 5, 2008) (holding in a TCPA action that "[t]he class action

procedure is the superior mechanism for dispute resolution in this matter. The alternative …

would be costly and duplicative."); *Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292, 294 (N.D.

Cal. 2013); *Vandervort v. Balboa Capital Corp.*, 287 F.R.D. 554, 563 (C.D. Cal. 2012); *City

Select Auto Sales, Inc. v. David Randall Associates, Inc.*, 296 F.R.D. 299, 322 (D.N.J. 2013)

("The Court agrees that at least six main common questions will be addressed in this class

action…."); *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 572 (W.D. Wash. 2012) ("For the

foregoing reasons, Plaintiff's motion for class certification…is granted"); *CE Design Ltd. v. Cy's

Crabhouse N., Inc.*, 259 F.R.D. 135, 143 (N.D.Ill.2009); *Kavu, Inc. v. Omnipak Corp.*, 246

F.R.D. 642, 651 (W.D.Wash.2007); *Law Offices of Leonard I. Desser, P.C. v. Shamrock

Commc'ns, Inc.*, No. JKB–12–2600, 2013 WL 2244811 (D.Md. May 21, 2013) (granting motion

to amend complaint to clarify allegations as to the purported class and denying motion to strike

class allegations as premature); *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 804

(N.D. Ill. 2008) ("For the reasons discussed below, I grant the motion and certify a class with a

slightly revised definition.").

## COUNT I
### Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227
### (On behalf of Plaintiff Newby and the No Consent Class)

48.     Plaintiff Newby repeats and realleges the above paragraphs of this Complaint and

incorporates them herein by reference.

49.     Defendant sent multiple automated text messages to cellular numbers belonging

to Plaintiff Newby and the other members of the No Consent Class without their prior express

12

consent.

50.     That is, Plaintiff Newby and the No Consent Class members were each shown an identical disclosure. The FCC has made clear that any such disclosure must secure the consumer's agreement to be called and that: (1) the agreement must be in writing, (2) the agreement must bear the signature of the person who will receive the advertisement/ telemarketing calls/texts, (3) the language of the agreement must clearly authorize the seller to deliver or cause to be delivered ads or telemarketing messages via autodialed calls or robocalls/robotexts, (4) the written agreement must include the telephone number to which the person signing authorizes advertisements or telemarketing messages to be delivered, (5) the written agreement must include a clear and conspicuous disclosure informing the person signing that: "By executing the agreement, the person signing authorizes the seller to deliver or cause to be delivered ads or telemarketing messages via autodialed calls or robocalls/robotexts, and (6) the person signing the agreement is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

51.     Rita's website disclosure shown to Plaintiff Newby and the other No Consent Class Members violated the FCC's rules because no language clearly authorized Rita's to deliver or cause to be delivered ads or telemarketing messages via autodialed calls or robocalls/robotexts.

52.     Each message sent by Defendant thus constitutes a violation of the TCPA.

53.     Plaintiff and the Classes are entitled to an award of $500.00 in statutory damages for each message sent in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

54.     Additionally, Plaintiff and the Classes are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

## COUNT II
### Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227
### (On behalf of Plaintiffs Brown and Newby and the "Replied Stop" Class)

55.     Plaintiffs repeat and reallege the above paragraphs of this Complaint and incorporates them herein by reference.

56.     Defendant and/or its agent transmitted unsolicited text message calls to cellular telephone numbers belonging to Plaintiffs and the other members of the Reply Stop Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention. The telephone dialing equipment utilized by Defendant and/or its agent, which is substantially similar to a predictive dialer, dialed numbers from a list, or dialed numbers form a database of telephone numbers, in an automatic and systematic manner.

57.     These text calls were made *en masse* and without the consent of the Plaintiffs and the other members of the Reply Stop Class to receive such wireless spam. Indeed, consent had been revoked by everyone since they each had responded "STOP."

58.     The text messages to Plaintiff and the class were made after any consent had been expressly revoked by responding "STOP." This alone violates the TCPA.

59.     Additionally, Defendants' supposed opt out mechanism isn't cost free. Among other things, it requires the transmission of data from the user's cell phone that results in a reduction of the user's allowable data. It also doesn't work and requires the user to spend time

14

and energy tracking down someone at Rita's in attempts to get the messages to actually stop.

60.    Based on such conduct, Defendants have violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of such conduct, Plaintiff and the other members of the Class are each entitled to, under section 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

61.    Additionally, because the messages steadily continue despite multiple requests that they STOP, the violations are capable of repetition, even if Rita's were to temporarily place them on hold.

## COUNT III
## Knowing and/or Willful Violations of the
## Telephone Consumer Protection Act,  47 U.S.C. § 227
## (On behalf of Plaintiffs and both Classes)

62.    Plaintiffs repeat and reallege the above paragraphs of this Complaint and incorporates them herein by reference.

63.    Defendants knowingly and/or willfully sent multiple automated text messages to cellular numbers belonging to Plaintiffs and the other members of the Classes without their prior express consent and after any consent was unmistakably revoked.

64.    Each of the aforementioned messages by Defendant constitutes a knowing and/or willful violation of the TCPA.

65.    As a result of Defendant's knowing and/or willful violations of the TCPA, Plaintiffs and the Classes are entitled to an award of treble damages up to $1,500.00 for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

66.    Additionally, Plaintiffs and the Classes are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court grant Plaintiffs and the Classes the following relief against Defendant and its franchisees as follows:

1.  Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;

2.  Statutory damages of $500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);

3.  Treble damages of up to $1,500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C);

4.  An award of attorneys' fees and costs to counsel for Plaintiff and the Classes; and

5.  Such other relief as the Court deems just and proper.

### TRIAL BY JURY DEMANDED ON ALL COUNTS

Dated: October 6, 2015

Respectfully submitted,

By: /s/ Jody Burton
Jody Burton (Bar No.: 71681)
LEMBERG LAW, L.L.C.
1100 Summer Street, Third Floor
Stamford, CT 06905
Telephone: (203) 653-2250 ext. 5500
Facsimile:   (203) 653-3424
Email: jburton@lemberglaw.com

By:
Stephen F. Taylor (phv)
LEMBERG LAW, L.L.C.
1100 Summer Street, Third Floor
Stamford, CT 06905
Telephone: (203) 653-2250 ext. 5502
Facsimile:   (203) 653-3424
Email: staylor@lemberglaw.com

16

Barry L. Cohen, Esquire
cohen@rccblaw.com
101 W. Elm Street, Ste. 220
Conshohocken, PA 19428
Telephone: 484-362-2628
Facsimile: 484-362-2630

Steven L. Woodrow
(swoodrow@woodrowpeluso.com)*
Patrick H. Peluso
(ppeluso@woodrowpeluso.com)*
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675

## CERTIFICATE OF SERVICE

**THIS IS TO CERTIFY** that on October 6, 2015, a copy of the foregoing was mailed to the clerk of the Court for processing.  In addition, a copy of the foregoing was served on counsel listed below by electronic transmission.

Constantine Thomas Fournaris
Wiggin and Dana LLP
Two Liberty Place
50 S. 16th Street, Suite 2925
Philadelphia, PA 19102

John Doroghazi
Kim E. Rinehart
Wiggin and Dana LLP
One Century Tower
P.O. Box 1832
New Haven, CT 06508-1832
*Counsel for Defendant*


Stephen F. Taylor