# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Sherry Brown and Ericka Newby, *on their own behalf and on behalf of all others similarly situated*, | : |
| | : |
| | : |
| | : |
| Plaintiffs, | : CIVIL ACTION NO: 15-CV-3509-TJS |
| v. | : |
| | : |
| Rita's Water Ice Franchise Company LLC, *a Pennsylvania Limited Liability Company*, | : |
| | : |
| Defendant | : |
| | : |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR <u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................. 1

II.     LEGAL, FACTUAL, AND PROCEDURAL BACKGROUND ...................................... 3

    A.   The TCPA and its Implementing Regulations. ............................................. 3

    B.   Plaintiffs' Allegations and Proposed Class Counsels' Investigation of the Claims.... 4

    C.   Litigation, Early Settlement Discussions, and the Private Mediation Process........... 6

III.    TERMS OF THE SETTLEMENT .................................................................... 8

    A.   Class Definition. ................................................................................... 8

    B.   Monetary Relief. ................................................................................... 9

    C.   Payment of Claims. ............................................................................... 9

    D.   Additional Relief. ................................................................................ 10

    E.   The Release by Plaintiff and the Settlement Class. ..................................... 11

IV.     THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED ...................... 11

    A.   The Numerosity Requirement is Satisfied. ................................................ 12

    B.   The Commonality Requirement is Satisfied. ............................................. 13

    C.   The Typicality Requirement is Met. ......................................................... 14

    D.   The Requirement of Adequate Representation is Satisfied. .......................... 15

    E.   The Proposed Settlement Class Meets the Requirements of Rule 23(b). ................ 16

        1.   Rita's has acted on grounds substantially similar to all Settlement Class Members. ....................................................................................... 16

        2.   Common Issues of Law and Fact Predominate. ................................... 17

        3.   The Class Mechanism is a Superior Method of Adjudication. ................. 18

    F.   Plaintiff's Counsel Should be Appointed as Class Counsel ........................... 19

V.      THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ......... 20

    A.   The Settlement Agreement Is the Result of Engaged, Arm's-Length Negotiations Overseen By An Experienced Mediator. ................................................... 21

B.   The Settlement Agreement Is a Preferable Alternative to the Risks Through Continued Litigation................................................................................ 22

C.   The Settlement Agreement Does Not Provide Unwarranted Preferential Treatment to Any Segment of the Class. ........................................................ 23

D.   The Settlement Agreement Provides a Substantial Benefit to Settlement Class Members and Falls Within a Range of Possible Approval. ...................................... 24

VI.   NOTICE TO THE CLASS SHOULD BE APPROVED.................................................. 28

VII.   CONCLUSION................................................................................................ 30

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allen v. Int'l Truck & Engine Corp.*, 358 F.3d 469 (7th Cir. 2004) ...............................18

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231 (1997) ........................... passim

*Baby Neal for and by Kanter v. Casey*, 43 F.3d 48 (3d Cir. 1994)................................13

*Barabin v. Aramark Corp.*, 210 F.R.D. 152 (E.D. Pa. 2002) ........................................14

*Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979)......................23

*Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492 (E.D. Pa. 2009)......................18

*Clarke v. Lane*, 267 F.R.D. 180 (E.D. Pa. 2010) ..............................................12, 14, 16

*Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000) .................................24

*Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010) ........................................20

*Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir. 1985)...................................................13

*Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355 (3d Cir. 2015) .....................4

*Ferrington v. McAfee, Inc.*, 2012 WL 1156399 (N.D. Cal. Apr. 6, 2012) ....................25

*Forcellati v. Hyland's Inc.*, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014)....................25

*Gascho v. Global Fitness Holdings, LLC*, 2014 WL 1350509 (S.D. Ohio Apr. 4, 2014)............29

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 102 S. Ct. 2364 (1982) ........................13

*Gragg v. Orange Cab Co., Inc.*, 2013 WL 1788479 (W.D. Wash. Apr. 26, 2013).........................3

*Grant v. Capital Mgmt. Servs., L.P.*, 2011 WL 3874877 (9th Cir. Sept. 2, 2011) .........................4

*Hanlon v. Palace Entm't Holdings, LLC*, 2012 WL 27461 (W.D. Pa. Jan. 3, 2012) ..................20

*Hassine v. Jeffes,* 846 F.2d 169 (3d Cir. 1988)...........................................................12

*In re AMF Bowling*, 334 F. Supp. 2d 462 (S.D.N.Y. 2004) ........................................22

*In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336 (E.D. Pa. 2007) ...................22

*In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) ..............27

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001)...............................................................21

*In re Flonase Antitrust Litig.*, 291 F.R.D. 93 (E.D. Pa. 2013)......................................................29

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) ................................................................................................................................20

*In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2008).......................................17

*In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 144 (D.N.J. 2013)...................................29

*In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631 (E.D. Pa. 2003)................................21, 24

*In re Mut. Funds Inv. Litig.*, 2011 WL 1102999 (D. Md. Mar. 23, 2011)....................................29

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998) .............................................................................................................................12, 17

*In re Residential Doors Antitrust Litig.*, 1998 WL 151804 (E.D. Pa. Apr. 2, 1998)....................24

*In re So. Ohio Corr. Facility*, 175 F.R.D. 270 (S.D. Ohio 1997) .................................................24

*In re Sterling Fin. Corp. Sec. Class Action*, 2009 WL 2914363 (E.D. Pa. Sept. 10, 2009) .........27

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004)...........................................21

*In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004) .....................22

*Jackson v. Se. Pa. Transp. Auth.,* 260 F.R.D. 168 (E.D. Pa. 2009) .........................................13, 15

*Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178 (3d Cir. 2001) ................................................16

*Jordan v. Commonwealth Fin. Sys., Inc.*, 237 F.R.D. 132 (E.D. Pa. 2006)..................................18

*Kallow & Springut, LLP v. Commence Corp.*, 272 F.R.D. 397 (D.N.J. 2011).............................17

*Klingensmith v. BP Products N. Am., Inc.*, 2008 WL 4360965 (W.D. Pa. Sept. 28, 2008) .........20

*Lake v. First Nationwide Bank*, 156 F.R.D. 615 (E.D. Pa. 1994)..................................................18

*Lees v. Anthem Ins. Cos. Inc.*, 2015 WL 3645208 (E.D. Mo. June 10, 2015).............................24

*Malta v. Fed. Home Mortg. Corp.*, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013)...........................29

*McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626 (E.D. Pa. 2015)............................................27

*Mehling v. N.Y. Life Ins. Co.*, 246 F.R.D. 467 (E.D. Pa. 2007)..............................................20, 22

*Milliron v. T-Mobile USA, Inc.*, 423 F. App'x 131 (3d Cir. 2011)..............................................29

*Mims v. Arrow Financial  Servs., LLC*, 132 S. Ct. 740 (2012)....................................................3

*Moskowitz v. Lopp*, 128 F.R.D. 624 (E.D. Pa. 1989)....................................................................12

*Ott v. Mortgage Inv'rs Corp. of Ohio, Inc.*, 2016 WL 54678 (D. Or. Jan. 5, 2016).....................25

*Perez v. Asuiron Corp.*, 501 F. Supp. 2d 1360 (S.D. Fla. 2007) ...................................................29

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S. Ct. 2965 (1985) .....................................29

*Rivera v. Lebanon Sch. Dist.*, 2013 WL 877161 (M.D. Pa. Mar. 8, 2013)....................................20

*Rose v. Bank of Am. Corp.*, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014)...............................27

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) ..................................3

*Smith v. Dominion Bridge Corp.*, 2007 WL 1101272 (E.D. Pa. Apr. 11, 2007) ..........................27

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001).......................................................................13

*Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386 (E.D. Pa. 2001)......................................13

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541 (2011) .................................13, 17

*West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710 (S.D.N.Y. 1970) ...................................23

*West Virginia v. Chas. Pfizer & Co.*, 440 F.2d 1079 (2d Cir. 1971) ...........................................23

*Wolgin v. Magic Marker Corp.*, 82 F.R.D. 168 (E.D. Pa. 1979) ..................................................12

## Statutes

47 U.S.C. § 227 *et seq*...................................................................................................................1

47 U.S.C. § 227(a)(1).....................................................................................................................3

47 U.S.C. § 227(b)(1)(A)(iii)..........................................................................................................3

47 U.S.C. § 227(b)(3)(A-B)............................................................................................................4

**Rules**

Fed. R. Civ. P. 23(a) ..................................................................................12

Fed. R. Civ. P. 23(a)(1) .............................................................................12

Fed. R. Civ. P. 23(a)(3) .............................................................................14

Fed. R. Civ. P. 23(a)(4) .............................................................................15

Fed. R. Civ. P. 23(b)(2) .......................................................................12, 16

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................28

Fed. R. Civ. P. 23(g)(1)(A) ........................................................................19

Fed. R. Civ. P. 23(g)(4) .............................................................................19

**Regulations**

47 C.F.R. § 64.1200 *et seq.* .......................................................................1

47 C.F.R. § 64.1200(f)(8) ...........................................................................17

47 C.F.R. § 64.1200(f)(8)(i) .........................................................................4

**Other**

Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS (4th ed. 2002) .....................12

Manual for Complex Litig. (2d. ed. 1985) .....................................................21

Manual for Complex Litig. (3d ed. 1995) .....................................................22

Manual for Complex Litig. (4th ed. 2004) ...............................................11, 24

Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,

73 Fed.Reg. 6041 (Feb. 1, 2008) ..................................................................3

Plaintiffs Sherry Brown ("Brown") and Ericka Newby ("Newby") (collectively the "Plaintiffs"), having reached a class action settlement agreement with Defendant Rita's Water Ice Franchise Company, LLC ("Rita's" or "Defendant") (collectively, the "Parties"), respectfully move this Court, pursuant to Federal Rule of Civil Procedure 23, for an order: (1) granting preliminary approval of the Class Action Settlement (the "Settlement") in this matter, (2) certifying the proposed Settlement Class for settlement purposes, (3) approving the form and content of the Notice to be sent to the members of the Settlement Class pursuant to the plan detailed in the Settlement Agreement, (4) appointing proposed Class Counsel and the Class Representative to represent the Settlement Class, and (5) scheduling a final fairness hearing.

## I.   <u>INTRODUCTION</u>

The Parties have reached a Settlement Agreement in this case challenging certain text messages sent by Rita's—specifically, Rita's "Cool Alerts"—as violating the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (the "TCPA"), and its implementing regulations, 47 C.F.R. § 64.1200 *et seq*. (the "Regulations"). Plaintiffs alleged that Rita's violated the TCPA in two ways: (1) by using outdated and insufficient consent language as now required under 47 C.F.R. § 64.1200, and (2) by sending Cool Alerts text messages to people who had replied "STOP" in an effort to end their transmission.

Following the exchange of meaningful formal and informal discovery, including the disclosure of data regarding the size and scope of the alleged classes and information regarding Defendant's financial position, the Parties engaged in extensive arm's length settlement negotiations overseen by a respected retired magistrate judge, the Honorable Diane Welsh (Ret.) of JAMS. The proposed Settlement, if approved, will finally resolve all claims asserted against Rita's in this matter and will provide the Settlement Class with substantial monetary relief and

prospective measures necessary to ensure that Rita's no longer sends unauthorized text messages.[1]

Settlement discussions were hard-fought, adversarial and resolution was by no means certain. Rita's made clear that it would contest and vigorously defend the litigation and that, if Rita's proved unsuccessful, the Class would obtain no relief as Rita's would become judgment proof due to its financial and market position. As such, proposed Class Counsel was required to closely examine Defendant's financial records, and ultimately enlisted the services of a well-respected forensic accountant and financial expert, Stephen Shulman. This ensured that the Class obtained the maximum benefits possible under the circumstances. Following two full-day mediation sessions with Magistrate Judge Welsh (Ret.) at JAMS's offices in Philadelphia, numerous telephone conferences and exchanges of documents and communications, the Parties were able to reach an agreement in principal on the terms of an incredibly strong settlement for Plaintiffs and the Settlement Class.

Under the terms of the settlement, Rita's will establish a Settlement Fund totaling three million dollars ($3,000,000.00 USD) from which Settlement Class Members who submit valid claims will be entitled to significant cash payments. The amount of each claim will depend upon the number of claims eventually filed and are projected to range from approximately $250 up to $2,750, depending on the circumstances surrounding the claimant's receipt of the text messages. Additionally, the Settlement provides for prospective relief that will enhance the Defendant's

---

[1] The executed Settlement Agreement is attached hereto as <u>Exhibit A</u>.  Appended to the Settlement Agreement and incorporated therein are the following exhibits:

    <u>Exhibit 1</u> – the "Claim Form"
    <u>Exhibit 2</u> – the "Final Approval Order"
    <u>Exhibit 3</u> – the "Notice" – containing both the Post-Card Notice and Long-Form Notice
    <u>Exhibit 4</u> – the "Preliminary Approval Order"
    <u>Exhibit 5</u> – the Final Judgment

disclosures contained on its online Cool Alerts webpage. In total, the Settlement provides significant relief to Plaintiff and the Settlement Class.

Accordingly, given the significant hurdles facing Class members in this litigation, including Rita's ability and willingness to vigorously defend against the claims at issue and the difficulty the Class members would have in collecting a substantial percentage of any judgment, the Court should find that the results achieved are well within the range of possible approval and grant the instant motion in its entirety.

## II.   LEGAL, FACTUAL, AND PROCEDURAL BACKGROUND

### A.   The TCPA and its Implementing Regulations.

A brief summary of the law that forms the basis of Plaintiffs' claims helps put the Settlement Agreement in its proper context. Congress enacted the TCPA in 1991 as a response to "[v]oluminous consumer complaints about abuses of telephone technology . . . ." *Mims v. Arrow Financial Servs., LLC*, 132 S. Ct. 740, 744 (2012). In enacting the TCPA, Congress sought to "protect the privacy interests of telephone subscribers." *Satterfield v. Simon & Schuster*, *Inc.*, 569 F.3d 946, 954 (9th Cir. 2009); *see also Mims*, 132 S. Ct. at 745. Courts have uniformly held that the TCPA applies with equal force to the making of text message calls as it does to the making of voice calls to cellular phones. *Satterfield*, 569 F.3d at 954.

To prevail, a plaintiff must show that a person: (1) made text message calls, (2) using an Automatic Telephone Dialing System (ADTS)[2], (3) to a telephone number assigned to a cellular

---

[2] Congress defined an ATDS to mean "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The FCC, in turn, has explained that equipment that dials or sends texts to a list of numbers is an ATDS, because "'the basic function of such dialing equipment' is the same—'the capacity to dial numbers without human intervention.'" *Gragg v. Orange Cab Co., Inc.*, 2013 WL 1788479, at *2 (W.D. Wash. Apr. 26, 2013) (citing *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 73 Fed.Reg. 6041, 6042 (Feb. 1, 2008)). Rita's has indicated that if the case proceeded to litigation it would contest

telephone service. *See* 47 U.S.C. § 227(b)(1)(A)(iii). Whether Plaintiffs and other Class members provided their prior express consent to receive such text messages is an affirmative defense. *See, e.g.*, *Grant v. Capital Mgmt. Servs., L.P.*, 2011 WL 3874877, at *1 n.1 (9th Cir. Sept. 2, 2011) ("'[E]xpress consent' is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof."); *see also Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355, 366 (3d Cir. 2015) (recognizing defendant's burden of showing prior express consent as an affirmative defense). Under the Regulations, prior express consent must "include a clear and conspicuous disclosure informing the person signing that:

> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and

> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

47 C.F.R. § 64.1200(f)(8)(i). The TCPA sets statutory damages in the amount of $500 per violation (trebled to $1,500 per text message if the violations are found to have been willful) and provides for injunctive relief prohibiting the further transmission of such messages. *See* 47 U.S.C. § 227(b)(3)(A-B).

Having put Plaintiff's claims in legal perspective, a review of the Plaintiffs' claims and the process leading up to the Settlement is demonstrative of the procedural and substantive fairness of the agreement.

### B. Plaintiffs' Allegations and Proposed Class Counsels' Investigation of the Claims.

Rita's is a well-known international franchise based in Trevose, Pennsylvania, selling many flavors of Italian ice, frozen custard, and other specialty creations. (*See* Declaration of

---

the classification of its text messaging system as an automatic telephone dialing system under the TCPA.

Attorney Steven Woodrow in Support of Preliminary Approval ("Woodrow Decl.") ¶ 2.) Since 1984, the company, through franchising, has grown to over 600 locations in 25 states and the District of Columbia. As indicated above, this case concerns Rita's "Cool Alerts"—emails and text messages to consumers notifying them that their selected flavors are available at their Rita's' location. (Woodrow Decl. ¶ 2.) Rita's maintains a page on its website, uniform for all franchisees, that allows customers to indicate which flavors they want to receive notifications about and to indicate whether they want to receive text messages or emails. (Woodrow Decl. ¶ 3.) Persons who sign up include contact information such as their names, email addresses, and cellular telephone numbers. (Woodrow Decl. ¶ 3.)

Plaintiff Newby signed up for Rita's Cool Alerts in October 2014 via Rita's' website. (Woodrow Decl. ¶ 4.) Shortly after receiving a few texts, Newby decided that she did not want to receive them any further, so she responded "STOP" as instructed by the texts she had received. (Woodrow Decl. ¶ 4.) But Rita's continued to text her. (Woodrow Decl. ¶ 4.) Indeed, despite Newby's repetitive requests to have the messages "STOP," Rita's kept sending the text messages to her cellular phone, each time informing her that she should reply STOP to opt-out of receiving such messages. (Woodrow Decl. ¶ 4.) Newby sent emails to Rita's asking for the messages to stop, which also went ignored. (Woodrow Decl. ¶ 4.)

Plaintiff Brown did not sign up to receive Rita's text messages but received them all the same. (Woodrow Decl. ¶ 5.) Like Newby, despite Brown's repeated "STOP" response text messages, Rita's continued sending additional text messages to her cellular telephone. (Woodrow Decl. ¶ 5.)

Newby and Brown separately reached out to two different law firms to learn about their legal rights in the face of such text messages. (Woodrow Decl. ¶ 6.) Upon being contacted by Brown, proposed Class Counsel, Sergei Lemberg and Stephen Taylor, promptly and thoroughly

commenced an investigation into her claims, including a review of Rita's websites, the text messages, and public information regarding complaints about Rita's. (Woodrow Decl. ¶ 6.) Similarly, upon being contacted by a lawyer for Newby, proposed Class Counsel, Steven L. Woodrow and Patrick H. Peluso, investigated the allegations, reviewed Rita's websites, and prepared pleadings for filing. (Woodrow Decl. ¶ 7.)

Plaintiff Brown filed her class action complaint first (Case No. 2:15-cv-03509-TJS) on June 22, 2015, which was assigned to the Honorable Timothy Savage. (Woodrow Decl. ¶ 8.) Plaintiff Newby filed her case separately several weeks later on July 13, 2015, styled *Newby v. Rita's Water Ice Franchise Company, LLC*, 15-cv-03880 (E.D. Pa.), which was then assigned to Judge Slomsky. (Woodrow Decl. ¶ 8.)

Following Newby's filing, Plaintiffs' counsel contacted each other and engaged in a series of conferences. (Woodrow Decl. ¶ 9.) As a result of discussions from these conferences, proposed Class Counsel determined that the best way to proceed would be to self-order and cooperate jointly in the prosecution of the litigation. (Woodrow Decl. ¶ 9.) As such, on October 6, 2015, Newby voluntarily dismissed her claims against Rita's. (Woodrow Decl. ¶ 10.) The following day, October 7, 2015, Brown filed an amended complaint that named Newby as an additional plaintiff and added her claims regarding Rita's deficient online disclosures. (Woodrow Decl. ¶ 10.)

### C.  Litigation, Early Settlement Discussions, and the Private Mediation Process.

Prior to Newby joining the *Brown* Complaint as a named plaintiff, Judge Savage, at the case management conference held on September 9, 2015, indicated that the Parties both had risk in the case and that the matter should proceed to mediation. (Woodrow Decl. ¶ 11.) The Court additionally indicated that it would provide the Parties with a list of recommended mediators. (Woodrow Decl. ¶ 11.) Counsel for the Parties thereafter discussed both the prospects for

resolving the case through a private mediation process and the information each party would need to mediate effectively. (Woodrow Decl. ¶ 12.) The Parties thereafter engaged in both formal and informal discovery. (Woodrow Decl. ¶ 12.) That is, the Plaintiffs responded to interrogatories and document requests propounded by Rita's, which disclosed much of Plaintiffs' evidence in the case, such as copies of the text messages they had each received. (Woodrow Decl. ¶ 12.)

Similarly, Rita's responded to formal discovery served on it by the named Plaintiffs and additionally provided informal discovery—including information about: (1) the number of unique cellphone users who had signed up on Rita's website for Cool Alerts prior to any updating of the consent language, (2) the total number of text messages sent to such cellphone users, (3) the number of cellphone users who had replied "STOP" to a Rita's text message and thereafter received at least one additional text message, and (4) the total number of "post-Stop" text messages Rita's sent to such persons. (Woodrow Decl. ¶ 12.) Proposed Class Counsel used this information to estimate the size of the proposed classes and the extent of Rita's' liability and exposure. (Woodrow Decl. ¶ 13.)

Counsel for the Parties ultimately agreed to a mediation session with the Honorable Diane Welsh (Ret.) of JAMS in Philadelphia. On October 20, 2015, counsel for the Parties convened at JAMS's offices in Philadelphia. In addition to its legal counsel, Rita's' Chief Executive Officer, Chief Financial Officer, and Chairman of the Board were present on behalf of Rita's at the mediation session. Despite a full day of arm's length discussions in both joint and private sessions overseen by Magistrate Judge Welsh, the Parties were unable to reach an agreement at that first session regarding the terms of a settlement. However, at Judge Welsh's urging, the Parties agreed to reconvene for a second mediation session to be held in December.

Accordingly, on December 23, 2015, counsel for the Parties, together with Rita's' management team from the first mediation session, reconvened in Philadelphia for a second full-day mediation with Judge Welsh. The Plaintiffs additionally brought along their financial expert, Steven Shulman, who was retained to review and analyze Rita's' voluminous financial documents and reports to determine its financial position. The discussions were at times contentious, and both Parties expressed a willingness to leave the negotiating table. With Magistrate Judge Welsh's assistance, however, the Parties were ultimately able to reach an agreement in principle with respect to a settlement framework, followed by specific amounts for the two subgroups represented in the litigation (those individuals subject to the faulty consent language and those individual subject to failed "STOP" requests). Only after the Parties achieved an agreement in principle with respect to the relief to be made available to the Class did the Parties negotiate incentive awards for the Class Representatives and an award of reasonable attorneys' fees for Class Counsel.

The instant Settlement is the result of these efforts. As explained below, the terms are exceptionally favorable for the Class when compared to other TCPA class actions and are worthy of preliminary approval. A summary of the Settlement's key terms is set forth below.

## III.   <u>TERMS OF THE SETTLEMENT</u>

The central terms of the settlement are as follow:

### A.  Class Definition.

The "Settlement Class" is defined as: all persons[3] in the United States to whom Rita's sent a "Cool Alerts" text message between June 22, 2011 and September 15, 2015. (Settlement Agreement, Art. II, ¶ 29.)

---

[3] For the purpose of this definition, the term "person" includes individuals, business entities and partnerships. And for purposes of the settlement, multiple owners or users of a single cellular telephone are deemed to be a single member of the Settlement Class. (Settlement Agreement, Art. II, ¶ 28.)

### B.  Monetary Relief.

The Settlement requires Rita's to establish a Settlement Fund of three million dollars ($3,000,000.00), nearly all of which is designated for pay out to the Class to fund the terms of the Agreement, including: (1) the payment of all claims (submitted and paid in accordance with the provisions below), (2) all administrative, notice, and claims expenses (the "Settlement Administration Costs"), (3) the incentive awards to the Class Representatives ("Incentive Award"), and (4) any award of reasonable attorneys' fees and reimbursement of expenses ("Attorneys' Fees and Costs") as approved by the Court.

Each Settlement Class Member who submits a valid and timely claim form shall be eligible to receive a "Claimant Payment" determined by the following formula:

- (a) Class members who signed up to receive "Cool Alerts" text messages via a Rita's website who file Valid Claim Forms shall receive one (1) "Award Unit";

- (b) Class members who received text messages after requesting that the messages STOP who file Valid Claim Forms shall receive ten (10) Award Units;

- Any claimant who experienced both (a) and (b) above will receive eleven (11) Award Units;

- Each Award Unit will have an equal monetary value, determined by dividing the net Settlement Fund (calculated as the total Settlement Fund less Settlement Administration Costs, the Attorney's Fees and Costs and the Incentive Award) by the total number of Award Units (calculated based upon the number of eligible claiming Class Members).

### C.  Payment of Claims.

Checks for the Claimant Payments shall be valid for sixty (60) days after issuance. Any funds associated with Benefit Checks not cashed by class members within that time, following an attempt at re-mailing to the address on file or to any updated address, determined by using the National Change of Address Registry, will remain in the Settlement Fund.  Monies remaining in the Settlement Fund on account of uncashed Benefit Checks and any interest earned on the

monies in the Settlement Fund will belong and be paid to Rita's seventy (70) days following the final issuance of the Benefit Checks.

### D. Additional Relief.

**1.    Service Improvements and Assurances.** Through the Settlement, Rita's has also agreed to change its online Cool Alerts disclosures. For a period of twelve (12) months starting from the date the Settlement becomes Final, Rita's, to the extent it chooses to resume its sending of Cool Alerts text messages, will include the following written disclosure on its web pages where consumers enter their phone numbers to receive Cool Alerts:

> By [clicking/signing] below and providing my mobile phone number above, I agree and authorize Rita's to deliver or cause to be delivered to me marketing and other text messages sent using an automatic telephone dialing system, and I understand that I am not required to click below or provide my mobile phone number above (directly or indirectly), or to agree to enter into any such agreement as a condition of purchasing any property, goods, or services.

(Settlement Agreement Art. III.1.g.)

**2.    Incentive Award for Class Representative.** The Settlement Agreement provides that Rita's will not oppose an application submitted by Plaintiffs for incentive awards to each of the Plaintiffs Brown and Newby, as representatives of the Settlement Class, subject to Court approval, Class Representative Incentive Awards of five thousand dollars ($5,000 each, or a total of $10,000) (the "Incentive Award"). (Settlement Agreement Art. VI.2.b.) The Incentive Payment is intended to compensate Plaintiffs for their time and effort serving the Class in the Action and as compensation for Plaintiffs' settlement and release of their individual claims contained in the Settlement Agreement. (Settlement Agreement Art. VI.2.) Any Incentive Award shall be subject to court approval and paid from the Settlement Fund prior to the *pro rata* distribution of benefits to the Settlement Class.

**3.    Attorneys' Fees and Expenses.** The Settlement Agreement provides that Rita's will not oppose an application submitted by proposed Class Counsel for an award of one-

third (1/3) of the Settlement Fund (33.33% x $3,000,000 = $1,000,000) in Attorneys' Fees and for reimbursement of expenses (including court costs) associated with the Action. (Settlement Agreement Art. VI.1.) Any Attorneys' Fees and Expenses shall be subject to court approval and paid from the Settlement Fund prior to the *pro rata* distribution of benefits to the Settlement Class.

### E.  The Release by Plaintiff and the Settlement Class.

In exchange for the relief described above, upon the Effective Date, Rita's will receive a release from Plaintiffs and the Settlement Class Members of all claims arising under or relating to: (i) the TCPA, and any other similar state or federal law, (ii) statutory or common law claims predicated upon any alleged violations of the TCPA and/or any similar law, and (iii) statutory or common law claims arising from and related to any or all of the Released Parties' use of any automated dialing system and/or artificial or prerecorded voice, including any claim under or for violation of federal or state unfair and deceptive practices statutes, invasion of privacy, conversion, breach of contract, unjust enrichment, specific performance and/or promissory estoppel. (Settlement Agreement Art. V.)

On such terms, the Court should certify the Settlement Class and grant preliminary approval as set forth below.

### IV.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED

Before preliminary approval of a class action settlement can be granted, a court must determine that the proposed settlement class is appropriate for certification. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231 (1997); *Manual for Complex Litig.*, § 21.632 (4th ed. 2004). Federal Rule of Civil Procedure 23(a) provides that a class may be certified if: (i) the class is so numerous that joinder of all members is impractical, (ii) there are questions of law or fact common to the class, (iii) the claims or defenses of the representative parties are typical of those of the class,

and (iv) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 308-09 (3d Cir. 1998).

Once the requirements of Rule 23(a) have been met, the proposed class must then satisfy at least one of the three subsections of Rule 23(b). *Amchem*, 521 U.S. at 614. In this case, Plaintiff seeks certification of the Settlement Class under both Rule 23(b)(2) and Rule 23(b)(3). Rule 23(b)(2) provides that "the party opposing the class must has acted or failed to act on grounds generally applicable to the proposed class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Clarke v. Lane*, 267 F.R.D. 180, 195 (E.D. Pa. 2010) (quoting Fed. R. Civ. P. 23(b)(2)). Rule 23(b)(3), meanwhile, requires that: (i) the questions of law or fact common to all class members predominate over issues affecting only individual members, and (ii) the maintenance of a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Amchem*, 521 U.S. at 615; *Hassine v. Jeffes,* 846 F.2d 169, 177 n.4 (3d Cir. 1988).

As discussed further below, the proposed Settlement Class meets each of the requirements of Rules 23(a) and 23(b)(2) and (b)(3) and, therefore, certification is appropriate.

### A.  The Numerosity Requirement is Satisfied.

Rule 23(a)'s first requirement, numerosity, is satisfied where "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). There is no specific number of class members necessary to meet this requirement, nor is a plaintiff required to calculate the exact number of potential class members. *Moskowitz v. Lopp*, 128 F.R.D. 624, 628 (E.D. Pa. 1989). Instead, courts are permitted "to accept common sense assumptions in order to support a finding of numerosity." *Wolgin v. Magic Marker Corp.,* 82 F.R.D. 168, 171 (E.D. Pa. 1979); *See* Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 7.20, 66 (4th ed. 2002). Courts have typically found that

classes encompassing 40 or more members are sufficiently numerous. *See, e.g.*, *Jackson v. Se. Pa. Transp. Auth.*, 260 F.R.D. 168, 186 (E.D. Pa. 2009) ("While the Third Circuit has declined to set forth any hard and fast number required to satisfy this element, it has generally noted that . . . numbers in excess of forty . . . have sustained the requirement."); *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) (finding that numerosity is generally met "if the named plaintiff demonstrates that the potential number of Plaintiff exceeds 40"); *Eisenberg v. Gagnon*, 766 F.2d 770, 785-86 (3d Cir. 1985) (holding that numerosity is satisfied if there are "more than 90" plaintiffs).

The proposed Settlement Class in this case easily satisfies Rule 23's numerosity requirement. According to Rita's' own records, tens of thousands of individuals signed up to received Rita's text messages online under allegedly insufficient consent language. Likewise, thousands of consumers received text messages from Rita's after they had specifically asked for such messages to "STOP." (*See* Woodrow Decl. ¶ 13.) Thus, there should be little question that joinder of all members of the proposed Class would be impractical and that Rule 23(a)'s numerosity requirement is satisfied.

### B.  The Commonality Requirement is Satisfied.

Rule 23(a) next requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires the representative plaintiff to demonstrate that the proposed class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157, 102 S. Ct. 2364 (1982)). Stated differently, commonality requires that the "named plaintiff share at least one question of fact or law with the grievances of the prospective class." *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). A common question is one that stems from "a common nucleus of operative facts." *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 392 (E.D. Pa. 2001). Because commonality "requires only a single issue common to all members of the class, the requirement is easily met." *Id.*

13

In this case, the members of the Settlement Class share the following common questions of law and fact: (1) whether Rita's' online disclosures for its "Cool Alerts" text messages complied with the TCPA's disclosure requirements for prior express consent, (2) whether Rita's continued to send text messages to consumers after they had responded for the messages to "STOP", (3) whether Defendant used an automatic telephone dialing system when sending the messages, and (4) whether Rita's acted willfully under the TCPA. These common questions are susceptible to common answers through common proof. That is, if the consent language was insufficient with respect to the Plaintiffs, then such language violated the TCPA with respect to all consumers. Likewise, if it violated the TCPA to continue texting the Plaintiffs after they replied "STOP," then it similarly violated the TCPA when Rita's sent such messages to other Class Members.

In short, there are multiple questions of law and fact common to all Settlement Class Members, and the commonality requirement is satisfied.

### C.  The Typicality Requirement is Met.

The third requirement for certification under Rule 23(a) asks whether the Plaintiffs' claims are typical of those of the proposed Settlement Class. Fed. R. Civ. P. 23(a)(3). The court looks to "whether the named Plaintiff's claims are typical, in common-sense terms, of the class." *Clarke*, 267 F.R.D. at 197. The typicality requirement is closely related to commonality and is similarly satisfied if the Plaintiff's claims arise "from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Barabin v. Aramark Corp.*, 210 F.R.D. 152, 159 (E.D. Pa. 2002). In fact, factual differences, including "relatively pronounced factual differences," will generally not be fatal to typicality if the legal theories are similar.

As alleged in the Complaint, Plaintiffs and the proposed Settlement Class share the exact same legal theories and their claims have the same essential characteristics. That is, each Class

Member received Cool Alert text messages from Rita's using an automatic telephone dialing system. Tens of thousands of people signed up for Rita's Cool Alerts on a Rita's website, like Plaintiff Newby. Likewise, a significant number of consumers received text messages after responding "STOP," as both Brown and Newby experienced.  Such claims therefore arise out of the same nucleus of facts such that, by pursuing their own claims, Plaintiffs will necessarily advance the interests of the proposed Settlement Class.  Accordingly, Plaintiffs' claims are sufficiently typical of those of the other Settlement Class members. Rule 23(a)(3)'s typicality prerequisite is therefore met.

### D.  The Requirement of Adequate Representation is Satisfied

Finally, Rule 23(a) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *Amchem*, 521 U.S. at 625 (finding that the purpose of the adequacy requirement is "to uncover conflicts of interest between named parties and the class they seek to represent"). To satisfy the adequacy requirement, class representatives must establish that: (i) they are represented by qualified counsel and (ii) they have sufficient interests in the outcome of the case. *Jackson*, 260 F.R.D. at 192.

Here, Plaintiffs have the same interests as the proposed Settlement Class—obtaining monetary and prospective relief from Defendant for the transmission of allegedly unlawful text messages. Like the other Settlement Class Members, they received text messages they ultimately did not wish to receive. As a result, they all have the same interest in recovering statutory damages and in ensuring that Rita's stops sending such text messages. Neither Plaintiffs nor their counsel have any interests antagonistic to those of the proposed Settlement Class, and Plaintiffs' pursuit of this action demonstrates as much. Indeed, Plaintiffs have and will continue to advocate vigorously on behalf of the Settlement Class.

Similarly, proposed Class Counsel, lawyers at the law firms of Lemberg Law, LLC, and Woodrow & Peluso, LLC, are well-respected members of the legal community with extensive

experience in class actions of similar size, scope, and complexity to the instant action. (Woodrow Decl. ¶ 21; Declaration of Sergei Lemberg of Lemberg law, LLC, ¶¶ 2-9.) They have regularly engaged in major complex litigation involving the transmission of unlawful text messages, have the resources necessary to conduct litigation of this nature, and have been appointed lead class counsel by courts throughout the country. (*See* Firm Resume of Woodrow & Peluso, LLC, true and accurate copies of which are attached to the Woodrow Declaration; Lemberg Decl. ¶¶ 2-9.) Proposed Class Counsel have diligently investigated, prosecuted, and dedicated substantial resources to the claims in this action, and will continue to do so throughout its pendency. (Woodrow Decl. ¶ 22; Lemberg Decl. ¶ 12.)

Accordingly, Plaintiffs and their Counsel have and will continue to adequately represent the Settlement Class.

### E.  The Proposed Settlement Class Meets the Requirements of Rule 23(b).

Upon satisfying Rule 23(a)'s prerequisites, a plaintiff must also demonstrate that the proposed class satisfies one of the three subsections of Rule 23(b). *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 183 (3d Cir. 2001). Here, Plaintiff seeks to certify the proposed Settlement Class under both Rule 23(b)(2) and Rule 23(b)(3). As explained below, the proposed Settlement Class meets both of these requirements.

#### 1.  Rita's has acted on grounds substantially similar to all Settlement Class Members.

As set forth above, Rule 23(b)(2) provides that "the party opposing the class must has acted or failed to act on grounds generally applicable to the proposed class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Clarke*, 267 F.R.D. at 195 (quoting Fed. R. Civ. P. 23(b)(2)). For the injunctive claims, Rita's has treated members of each class in the exact same way. That is, every member of the class received messages despite not providing Rita's with prior express written consent that comports

with 47 C.F.R. § 64.1200(f)(8). Likewise, for Class Members who received text messages after responding "STOP," Rita's continued to send text messages after repeated "STOP" instructions by recipients. As such, Rita's has acted or refused to act on grounds generally applicable to the class, rendering Rule 23(b)(2) certification appropriate.

**2.**   **Common Issues of Law and Fact Predominate.**

With respect to Rule 23(b)(3), the inquiry into whether common questions predominate is generally focused on whether there are common liability issues that may be resolved efficiently on a class basis. *Amchem*, 521 U.S. at 623; *Dukes*, 131 S. Ct. at 2551-57. Although common issues must predominate, they need not be exclusive. *In re Prudential*, 148 F.3d at 315. Common issues predominate if the class can prove the essential elements of the claim "through evidence that is common to the class." *Kallow & Springut, LLP v. Commence Corp.*, 272 F.R.D. 397, 406 (D.N.J. 2011); *see also In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311-12 (3d Cir. 2008). In addition, courts find that "common issues predominate when the focus is on the defendant's conduct" rather than on the conduct of the class. *Kallow*, 272 F.R.D. at 406.

To prevail on their claims, Plaintiffs and each member of the Settlement Class need only establish that: (i) Rita's sent them text messages using an ATDS, (ii) Rita's claims that it obtained prior express consent to send the messages via its "Cool Alerts" webpages, and (iii) Rita's sent text messages after the consumers had responded "STOP." The manner in which Rita's sent the messages was virtually identical—each was transmitted using the same equipment following consent obtained through identical websites. Thus, Plaintiffs' claims will be subject to common proofs applicable to the Class as a whole, and the common questions resulting from Rita's' alleged misconduct predominate over any issues affecting only individual Class Members, such as the amount of damages each Class Member is entitled to recover. *See, e.g.*, *Allen v. Int'l Truch & Engine Corp.*,

358 F.3d 469, 472 (7th Cir. 2004) (issues such as the amount of individual damages to be awarded will not, generally, militate against class certification).

### 3.     The Class Mechanism is a Superior Method of Adjudication.

Finally, the instant class action Settlement is superior to any other available method for the fair and efficient adjudication of the claims in this case. Courts must "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492, 501 (E.D. Pa. 2009); *see Lake v. First Nationwide Bank*, 156 F.R.D. 615 (E.D. Pa. 1994) (holding that a class action is a superior method of adjudication when the alternative approach includes numerous "state court actions by a large number of scattered plaintiffs, an inefficient allocation of judicial and public resources"); *Jordan v. Commonwealth Fin. Sys., Inc.*, 237 F.R.D. 132, 140 (E.D. Pa. 2006) (finding that when courts deny class actions, putative class members do not have the incentive to individually litigate and the lack of "redress . . . would dilute the deterrent effect" of the laws prohibiting defendant's unlawful conduct).

Absent class treatment in this case, each Settlement Class Member would be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judiciary and the litigants. Further, given the resources required to prosecute such an action and the absence of any other known litigations against Rita's alleging similar violations of law, there is no indication that members of the Class have a strong interest in such individual litigation. Certification will also give the Parties the benefit of finality. Finally, because this Action has now been settled, pending approval of the Court, the Court need not be concerned with issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for

settlement-only class certification, a district court need not inquire whether the case . . . would present intractable management problems....”). Thus, the superiority requisite is met.

Having satisfied each of the requirements for class certification under Rules 23(a) and 23(b), this Court should certify the proposed Settlement Class, for settlement purposes.

### F.  Plaintiff's Counsel Should be Appointed as Class Counsel

When the Court grants class certification under Rule 23, it must also appoint class counsel who will fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(4). In making this determination, the Court must consider proposed class counsel's: (i) work in identifying or investigating potential claims, (ii) experience in handling class actions and the types of claims asserted in the case at hand, (iii) knowledge of the applicable law, and (iv) resources they have committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

As discussed above, proposed Class Counsel have diligently investigated, prosecuted, and dedicated substantial resources to the investigation and prosecution of the claims at issue in this case, and will continue to do so throughout its pendency. (Woodrow Decl. ¶¶ 22; Lemberg Decl. ¶ 12.) Considering the depth and breadth of the information exchanged, proposed Class Counsel are well versed in both the facts of the case and the elements of the Class's legal claims and Defendant's defenses. (Woodrow Decl. ¶ 22; Lemberg Decl. ¶ 12.)  And, it was with this knowledge that proposed Class Counsel successfully negotiated the settlement now before the Court. (Woodrow Decl. ¶ 23; Lemberg Decl. ¶¶ 12-13.) Moreover, and as discussed above, proposed Class Counsel are well-respected members of the legal community, have significant experience litigating similar class actions, and have frequently been appointed lead class counsel by courts throughout the country. (Woodrow Decl. ¶ 21; Lemberg Decl. ¶¶ 3-4.)

For these reasons, the Court should appoint Plaintiff's counsel, Sergei Lemberg and Stephen Taylor of Lemberg Law, LLC and Steven Woodrow and Patrick Peluso of Woodrow & Peluso, LLC to serve as Class Counsel.

## V.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

In addition to certifying the Settlement Class, the Court must determine whether the proposed settlement warrants preliminary approval. There is a strong presumption in favor of settlements, especially in "'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'" *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)). Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement that will bind absent class members. This involves a "two-step process." *Rivera v. Lebanon Sch. Dist.*, 2013 WL 877161, at *1 (M.D. Pa. Mar. 8, 2013). During the initial, preliminary approval step, the court considers whether the settlement "falls within the range of possible approval," such that notice of the settlement may be sent to the class members. *Mehling v. N.Y. Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007). In the second step, after notice of the proposed settlement is sent to the class and the court holds a final fairness hearing, the court considers whether the settlement is fair, reasonable, and adequate, and warrants final court approval. *Id.*

The central question on preliminary approval is whether there are obvious deficiencies in the proposed settlement or reasons to doubt its fairness, and whether the settlement is the result of arm's-length negotiation. *Id.*; *Klingensmith v. BP Products N. Am., Inc.*, 2008 WL 4360965, at *5 (W.D. Pa. Sept. 28, 2008); *Hanlon v. Palace Entm't Holdings, LLC*, 2012 WL 27461, at *5 (W.D. Pa. Jan. 3, 2012). As noted in the *Manual for Complex Litigation, Second,* "[i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations,

has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing . . . ." *Manual for Complex Litig.*, § 30.44 (2d. ed. 1985).

The Parties' Settlement Agreement is the product of serious and informed arm's-length negotiations and falls well within "the range of possible approval" sufficient to warrant its preliminary approval.

### A. The Settlement Agreement Is the Result of Engaged, Arm's-Length Negotiations Overseen By An Experienced Mediator.

"A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003) (internal quotation marks omitted); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) (holding presumption of fairness applied even though settlement negotiations preceded certification); *In re Cendant Corp. Litig.,* 264 F.3d 201, 232 n.18 (3d Cir. 2001).

This Settlement is the product of extensive arm's-length negotiations by experienced counsel before a well-respected mediator and former judge. Plaintiff's counsel, Lemberg Law, LLC, and Woodrow & Peluso, LLC have been appointed class counsel in numerous consumer class actions and extensively litigate TCPA issues. (*See* Lemberg Decl. ¶ 3; Woodrow Decl. ¶ 21, Exhibit 1.) The combined experience of Class Counsel, together with their financial expert, demonstrates that the Settlement Class Members were well represented at the bargaining table. In addition, Rita's retained a highly regarded defense firm that has been involved in many complex class action lawsuits and settlements. Accordingly, there can be no serious dispute that both sides to the settlement were represented by experienced and highly competent counsel, which weighs heavily in favor of preliminary approval. *See, e.g., In re Auto. Refinishing Paint Antitrust Litig.*,

617 F. Supp. 2d 336, 341 (E.D. Pa. 2007); *accord*, *Manual for Complex Litig.*, § 30.42 (3d ed. 1995) ("[A] presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel.").

The negotiations between these experienced attorneys were hard fought, adversarial, and occurred over the course of several months before and through Judge Welsh, an experienced and respected mediator. Such arm's-length negotiations weigh in favor of preliminary approval. *Mehling*, 246 F.R.D. at 473; *In re AMF Bowling*, 334 F. Supp. 2d 462, 465 (S.D.N.Y. 2004) (the participation of a respected mediator "gives [the court] confidence that [the negotiations] were conducted in an arm's-length, non-collusive manner"); *In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (fact that "[a] respected and dedicated judicial officer presided over the lengthy discussions from which this settlement emerged" belied any suggestion of collusion in the negotiating process). Additionally, the negotiations were conducted with both formal and informal discovery in hand. Such discovery went to both the merits of class certification and class damages in addition to the financial wherewithal of the Defendant and its ability to withstand any judgment.

Thus, the Parties' agreement to settle this litigation reflects well-informed and engaged arm's-length bargaining with the assistance of a highly experienced mediator. The Settlement Agreement is not the product of collusion; to the contrary, it reflects the independent judgment of counsel for both Parties that its terms are fair and reasonable.

### B. The Settlement Agreement Is a Preferable Alternative to the Risks Through Continued Litigation.

Plaintiffs believe that their claims against the Defendant are strong, well supported by applicable law, and if pursued, would result in a judgment in favor of the Settlement Class. Notwithstanding this, the Plaintiffs recognize the certainty of recovery—both monetarily and in terms of prospective relief—the proposed settlement represents.

While Plaintiffs and their counsel believe the facts of this case make class certification appropriate, they are also aware that Rita's was prepared to argue that class certification was inappropriate and vigorously defend this action in this Court or on appeal. As in any case, there is a substantial risk of losing at trial. And, even if Plaintiff did prevail, any recovery could be delayed for years by an appeal or series of appeals. *See West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."), *aff'd*, 440 F.2d 1079 (2d Cir. 1971); *Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial). Of equal concern here was Rita's ability to financially withstand any successful judgment beyond what it agreed to in the Settlement. In contrast, the Settlement Agreement provides substantial relief to Settlement Class members without further delay.

### C. The Settlement Agreement Does Not Provide Unwarranted Preferential Treatment to Any Segment of the Class.

The Settlement Agreement allows each Class Member to claim a share of the Settlement Fund. All Class Members submitting claim forms will receive at least one Award Unit. Class Members who replied "stop" in response to Cool Alerts messages but continued to receive them are entitled to recover an additional ten Award Units.[4] The difference in application of Award Units reflects the relative nature of the class members' claims. That is, persons who have received multiple text messages after attempting to opt-out via a STOP request arguably have additional common facts (responding stop but continuing to get messages) that strengthen greatly their claims versus individuals who did not so clearly revoke the alleged consent or whose revocation was noted by Rita's.  In addition, in Rita's motion to dismiss (Doc. No. 18), it asserted a number of arguments

---

[4] Discovery shows that of the 138,895 total number of telephone numbers that were sent the Cool Alert's messages, 6,276 were sent messages after responding "stop."

supporting the validity of the original consent provided on the Cool Alerts website that it could not assert for those who had texted stop. The Settlement Agreement reflects this reality by providing those members additional award units.

The Plaintiffs also will seek Incentive Awards of up to $5,000.00. Plaintiffs' counsel believes that Plaintiffs' right to seek an incentive award for bringing and litigating this case on behalf of the class is permissible and promotes a public policy of encouraging individuals to undertake the responsibility of representative lawsuits. *Manual for Complex Litig.*, § 21.62 n.971 (4th ed. 2004). "'Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000) (quoting *In re So. Ohio Corr. Facility,* 175 F.R.D. 270, 272 (S.D. Ohio 1997)). Incentive Awards of up to $5,000.00 is reasonable and fair to the Plaintiffs for their efforts on behalf of the class and is within the range of awards approved in other class actions. *See, e.g.*, *Lees v. Anthem Ins. Cos. Inc.*, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (approving $10,000.00 incentive award and collecting cases); *In re Linerboard Antitrust Litig.*, 2004 WL 1221350, at *19 (approving incentive awards of $25,000.00 to each of five named plaintiffs); *In re Residential Doors Antitrust Litig.*, 1998 WL 151804, at *11 (E.D. Pa. Apr. 2, 1998) (approving $10,000.00 incentive awards to each of four named plaintiffs).

### D.  The Settlement Agreement Provides a Substantial Benefit to Settlement Class Members and Falls Within a Range of Possible Approval.

The Settlement Agreement requires Rita's to pay $3,000,000.00 into the Settlement Fund, out of which all eligible Settlement Class Members will receive a *pro rata* share of cash payments under the Award Units formula. The only portions of the fund that will return to Rita's are any interest the fund accumulates and any un-cashed Benefit Checks. Thus, Class Member recovery will not be affected by the funds that return to Rita's. Class Members will have every

24

opportunity to claim their right to a share. If a Class member does not claim his share, then those funds will be first dispersed to other Class Members through the Award Unit formula. Only Class Member benefits that are claimed but then not cashed by Class Members can return to Rita's. Assuming the Court grants the requested attorney's fees and costs of 1/3 of the fund and the $10,000.00 Incentive Awards, and assuming the estimated administrative costs of $129,646.13, Settlement Class Members will share $1,860,353.87.

Assuming a 5% response-rate, which would signal a substantial response from the Class[5], Class Counsel estimates that each Award Unit will be worth over $250.00 ($1,860,353.87 divided by 138,895 times 5%).[6] This is not an exact figure and will depend on the total number of valid claims received, the costs of Notice and Settlement Administration, and the Court's disposition of the Settlement Fund. Further, Settlement Class Members who replied "Stop" but were sent additional message, will receive an amount estimated to be over $2,500.00 (ten or eleven award units). These figures place this settlement comfortably in the range of settlements deemed fair and reasonable by many Courts in TCPA class actions. *See, e.g.*, *Ott v. Mortgage Inv'rs Corp. of Ohio, Inc.*, 2016 WL 54678, at *1 (D. Or. Jan. 5, 2016) (approving TCPA settlement of $7,483,600.00 gross settlement fund, where counsel estimated $140.86 recovery per claiming class member). For the purposes of clarity, Class Counsel has prepared the

---

[5] "[T]he prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3-5 percent." *Forcellati v. Hyland's Inc.*, 2014 WL 1410264, at *6 (C.D. Cal. Apr. 9, 2014); *Ferrington v. McAfee, Inc.*, 2012 WL 1156399, at *4 (N.D. Cal. Apr. 6, 2012) (same).

[6] 138,895 represents the total number of telephone numbers sent the Cool Alert's messages at issue.

following table of TCPA settlements with range in benefit to claiming class member of $20.00 to

$200.00:[7]

| Case name | Amount per Claimant |
|---|---|
| *Rose v. Bank of Am. Corp.*, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) | $20.00 to $40.00 |
| *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, 11-md-2261 (S.D. Cal.) | $12.97; or, $17.29 voucher |
| *Kazemi v. Payless Shoesource, Inc.*, 09- cv-5142 (N.D. Cal.) | $25.00 voucher |
| *In re Capital One Telephone Consumer Protection Act Litigation*, 12 C 10064 MDL No. 2416 (N.D. Ill. 2015) | $34.60 |
| *Steinfeld v. Discover Financial Services*, 12-cv-1118 JSW (N.D. Cal.) | $48.69 |
| *Bellows v. NCO Fin. Sys.*, 2008 U.S. Dist. LEXIS 13525 (S.D. Cal. 2008) | $70.00 |
| *Malta v. Fed. Home Loan Mortg. Corp.*, 10-cv-1290 BEN (S.D. Cal.) | $84.82 |
| *Wilkins, et al. v. HSBC Bank Nevada, N.A.*, 14 C 190 (N.D. Ill.) | $102.62 |
| *Gutierrez v. Barclays Grp.*, 10-cv-1012 (S.D. Cal.) | $100.00 |
| *Robles v. Lucky Brand Dungarees, Inc.*, 10-cv-4846-MMC (N.D. Cal.) | $100.00 |
| *Kramer v. B2Mobile*, 10-cv-2722 CW (N.D. Cal.) | $100.00 |
| *Lanza v. Upscale Events by Mosaic, LLC*, 13-cv-80093 DMM (S.D. Fla.) | $150.00 |

---

[7] This is a sample of TCPA settlements and is generally representative. There are several settlements where claimants received more than $200.00 per claim or less than $20.00.

| | |
|---|---|
| *Ellison v. Steven Madden, Ltd.*, 11-cv-5935 (C.D. Cal.) | $150.00 |
| *Bayat v. Bank of the West*, C 13-2376 EMC (N.D. Cal.) | $151.00 |
| *Weinstein v. The Timberland Co., et al.,* 06-cv-454 (N.D. Ill.) | $150.00 |
| *Satterfield v. Simon & Schuster, Inc.*, 06-cv-2893 (N.D. Cal.) | $175.00 |
| *Rojas v. Career Education Corporation*, 10-cv-5260 (N.D. Ill.) | $200.00 |
| *Lozano v. Twentieth Century Fox Film Corp.*, 09-cv-6344 (N.D. Ill.) | $200.00 |

The settlement here is more than reasonable in light of these other settlements under the TCPA that have been approved as fair, reasonable and adequate. *See also In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (discussing range of acceptable TCPA class settlements based on per claimant recovery, approving $34.60 per claiming member); *Rose v. Bank of Am. Corp.*, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (discussing range of acceptable TCPA settlements and approving $20.00 to $40.00 per claimant). This is especially so given that Rita's is nowhere near as large as most of the companies listed.

Finally, Class Counsel will request 1/3 of the Settlement Fund as attorney's fees and costs. Courts in the Third Circuit find fees as high as 45 percent of a common fund appropriate and routinely award a one-third fee. *McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 653 (E.D. Pa. 2015) (collecting cases); *Smith v. Dominion Bridge Corp.*, 2007 WL 1101272, at *9 (E.D. Pa. Apr. 11, 2007) (same); *see also In re Sterling Fin. Corp. Sec. Class Action*, 2009 WL 2914363, at *4 (E.D. Pa. Sept. 10, 2009) (approving 30% in fees of common fund of $10.25

million and stating "the settlement fund is not so large as to support a percentage smaller than thirty percent") (emphasis supplied).

Because the Settlement Agreement was negotiated at arm's-length by experienced counsel after extensive discovery, because the Settlement does not grant unwarranted preferential treatment to different Settlement Class Members, and because it is reasonable and easily falls within the range of possible approval, this Court should preliminary approve the Settlement Agreement.

**VI.    NOTICE TO THE CLASS SHOULD BE APPROVED**

In addition to preliminarily approving the substance of the Parties' Settlement Agreement, the Court should approve the proposed class Notice and notice plan. Pursuant to Rule 23(e), the Court is required to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Although the question of what constitutes reasonable notice is left to the discretion of the Court, Rule 23 provides that the best notice practicable "include[s] individual notice to all class members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice contemplated here. *See Settlement Agreement*, Art IV ¶ 3; *see also* Declaration of Christina Peters-Stasiewicz, Senior Project Manager with A.B. Data Class Action Administration ("Peters-Stasiewicz Decl.") ¶¶ 8-21).

First, the proposed Notice (Exhibit 3 to the Settlement Agreement) communicates the information required by Rule 23(c)(2)(B)(i)-(vii). Second, the Settlement Agreement calls for a process that the Parties anticipate will provide individual notice by mail to the vast majority of Settlement Class Members. Rita's records contain the telephone numbers of all of the texts made to the Settlement Class Members. The Settlement Administrator will use those telephone numbers to perform a reverse lookup of class members' current or last-known address

information, and will then cross-reference this information with the United States Postal Services'
change of address database to confirm its accuracy.

Mailed notice is presumptively reasonable, and satisfies the requirements of due process.
*See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812, 105 S. Ct. 2965 (1985) (finding the
procedure "where a fully descriptive notice is sent by first-class mail to each class member, with
an explanation of the right to 'opt-out,' satisfies due process"). Moreover, numerous courts have
approved mailing notice to class members via a postcard. *See, e.g., Gascho v. Global Fitness
Holdings, LLC*, 2014 WL 1350509, at *6-7, 29 (S.D. Ohio Apr. 4, 2014) (finally approving
settlement with postcard notice sent to majority of class); *In re Ins. Brokerage Antitrust Litig.*,
297 F.R.D. 136, 144, 151-52 (D.N.J. 2013) (finally approving settlement with postcard notice);
*In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 99 (E.D. Pa. 2013) (finally approving settlement
with postcard notice); *Malta v. Fed. Home Mortg. Corp.*, 2013 WL 444619, at *11 (S.D. Cal.
Feb. 5, 2013) (preliminarily approving settlement with postcard-type notice); *Milliron v. T-
Mobile USA, Inc.*, 2009 WL 3345762, at *4 (D.N.J. Sept. 10, 2009), *aff'd*, 423 F. App'x 131 (3d
Cir. 2011) (preliminarily approving settlement with postcard notice for non-current customers
and bill stuffers for current customers); *In re Mut. Funds Inv. Litig.*, 2011 WL 1102999, at *1-2
(D. Md. Mar. 23, 2011) (finding postcard notices satisfy Rule 23); *Perez v. Asuiron Corp.*, 501 F.
Supp. 2d 1360, 1375-77 (S.D. Fla. 2007) (finally approving settlement with postcard notice).

In addition, the Settlement Administrator will maintain a case-specific website to post
relevant documents (the Settlement Agreement, the Complaint, the Preliminary Approval Order)
in addition to the Long Form Class Notice (*Settlement Agreement*, Exhibit 3; Peters-Stasiewicz
Decl. ¶¶ 19-21). Further, the Settlement Administrator will establish and maintain a telephone
number that Settlement Class members can call to receive information via recorded messages or
to request an additional Notice. *Id.*

## VII.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order: (i) certifying the Settlement Class as defined in the Parties' Settlement Agreement, (ii) appointing Plaintiffs Sherry Brown and Erica Newby as the Settlement Class Representatives, (iii) appointing the undersigned as Class Counsel, (iv) preliminarily approving the Parties' Settlement Agreement, (v) approving the form and methods of the proposed notice, and (vi) granting such other and further relief as the Court deems reasonable and just.[8]

Dated: March 14, 2016                                          Respectfully submitted,

Sherry Brown and Erica Newby, *individually and on behalf of all others similarly situated*,

By:   */s/ Stephen Taylor*
Sergei Lemberg
Stephen Taylor
Lemberg Law LLC
1100 Summer Street, 3rd Floor
Stamford, CT 06905
Tel: 203.653.2250.ext.5502
Fax: 203.653.3424

By:   */s/ Steven Woodrow*
Steven Woodrow
Patrick Peluso
Woodrow & Peluso, LLC
3900 E Mexico Avenue, Suite 300
Denver, CO 80210
Tel: 720.213.0675
Fax: 303.927.0809

---

[8] A proposed preliminary schedule of deadlines leading to final approval is contained in the [Proposed] Preliminary Approval Order attached to the Settlement Agreement as Exhibit 4.

## <u>CERTIFICATE OF SERVICE</u>

I, Stephen Taylor, an attorney, certify that, on March 14, 2016, the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of such filing to the following:

John M. Doroghazi
Kim E. Rinehart
Wiggin & Dana LLP
One Century Tower
PO Box 1832
New Haven, CT 06508

Constantine Thomas Fournaris
Wiggin and Dana LLP
Two Liberty Place
50 S. 16th St. Ste 2925
Philadelphia, PA 19102

_/s/ Stephen Taylor_____
Stephen Taylor