## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Sherry Brown and Ericka Newby, *on their own behalf and on behalf of all others similarly situated*, | : <br> : <br> : <br> : <br> : |
| Plaintiffs, | : <br> :    CIVIL ACTION NO: 15-CV-3509-TJS |
| v. | : <br> : |
| Rita's Water Ice Franchise Company LLC, *a Pennsylvania Limited Liability Company*, | : <br> : <br> : |
| Defendant | : <br> : |

### DECLARATION OF STEVEN WOODROW IN SUPPORT OF
### MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

I, Steven Woodrow, on oath declare as follows:

1.     I am a partner with the law firm of Woodrow & Peluso LLC. I am one of the attorneys in the above-captioned matter who is seeking the Court's appointment as Co-Lead Settlement Class Counsel. I am over the age of 18 and can competently testify to the matters set forth below.

### *Nature of the Litigation and Proposed Class Counsel's Investigation*

2.     Rita's is a popular franchise based in Trevose, Pennsylvania, selling many flavors of Italian ice, frozen custard, and other specialty creations. Our pre-litigation research showed that since 1984, the company, through franchising, has grown to over 600 locations in 25 states and the District of Columbia. Despite ownership of different locations by many franchisees, our investigation revealed that all Rita's locations used the same website platform for customers to sign up for Cool Alerts emails and text messages.

3.     Using the website, customers can select their store and the flavors about which they want to receive notifications.  Cool Alerts text messages are then sent notifying customers

that their selected flavors are available at their selected Rita's' location. Customers who sign up include contact information such as their names, email addresses, and cellphone numbers.

4.     Our firms' investigation showed that Plaintiff Newby signed up for Rita's Cool Alerts in October 2014 via Rita's' website. She received several text messages and then decided that she did not want to receive them any longer. She responded "STOP" as instructed by the text messages. But despite Newby's STOP request, Rita's continued to text her. She sent multiple STOP requests, and also sent emails asking for the messages to stop.

5.     Plaintiff Brown did not sign up to receive Rita's text messages but received them all the same. Like Newby, despite Brown's repeated "STOP" response text messages, Rita's continued sending additional text messages to her cellphone.

6.     Newby and Brown separately reached out to different law firms to learn about their legal rights in the face of such text messages. From my conversations with the attorneys working on the case, upon being contacted by Brown, proposed Class Counsel, Sergei Lemberg and Stephen Taylor promptly and thoroughly commenced an investigation into her claims, including a review of Rita's websites, the text messages, and public information regarding complaints about Rita's.

7.     This mirrored the investigation that my firm conducted following our being contacted by a lawyer for Newby with whom we have prosecuted several TCPA actions. We promptly reviewed the facts and investigated Newby's claims, including reviewed Rita's websites. Once we were satisfied that Newby had a good faith basis for her claims, we prepared pleadings for filing.

### *The Brown and Newby Complaints and the Self-Ordering of Plaintiffs' Counsel*

8.     Plaintiff Brown filed her class action complaint first (Case No. 2:15-cv-03509-

TJS) on June 22, 2015, which was assigned to the Honorable Timothy Savage. Plaintiff Newby filed her case separately several weeks later on July 13, 2015, styled *Newby v. Rita's Water Ice Franchise Company, LLC*, 15-cv-03880 (E.D. Pa.), which was then assigned to Judge Slomsky.

9.      Following Newby's filing, Plaintiffs' counsel contacted each other and engaged in a series of talks regarding their respective views of the litigation generally and strategy in particular. As a result of these discussions, proposed Class Counsel determined that the best way to proceed would be to self-order and cooperate jointly in the prosecution of the litigation. This would provide the benefits of allocating more resources to the case while providing efficiencies that would be lost if the cases were simply pursued separately.

10.      As such, on October 6, 2015, Newby voluntarily dismissed her claims against Rita's. The following day, October 7, 2015, Brown filed an amended complaint that named Newby as an additional plaintiff and added her claims regarding Rita's deficient online disclosures.

### The Referral to Mediation

11.      My co-counsel informed me that Judge Savage, at the case management conference held on September 9, 2015, indicated that the Parties should seriously consider mediation. From my understanding of the case management conference, the Court additionally indicated that it would provide the Parties with a list of recommended mediators.

12.      Counsel for the Parties thereafter discussed both the prospects for resolving the case through a private mediation process and the information each party would need to mediate effectively, which lead to the exchange of both formal and informal discovery regarding both class and merits based issues. This included responses by both Plaintiffs to interrogatories and document requests propounded by Rita's, which disclosed much of Plaintiffs' evidence in the

case, such as copies of the text messages they had each received. Similarly, Rita's responded to formal discovery served on it by the named Plaintiffs and additionally provided informal discovery—including information about: (1) the number of unique cellphone users who had signed up on Rita's website for Cool Alerts prior to any updating of the consent language, (2) the total number of text messages sent to such cellphone users, (3) the number of cellphone users who had replied "STOP" to a Rita's text message and thereafter received at least one additional text message, and (4) the total number of "post-Stop" text messages Rita's sent to such persons.

13.     Using this information, proposed Class Counsel were able to estimate the size of the proposed classes and the extent of Rita's' liability and exposure. According to Rita's' own records, approximately 138,895 individuals signed up to received Rita's text messages online under allegedly insufficient consent language. A smaller group, totaling approximately 6,276, received text messages from Rita's after they had specifically asked for such messages to "STOP."

14.     The Parties, through their counsel, also agreed on a choice of mediator and scheduled their mediation for October 20, 2015.

### The Mediation Sessions with Magistrate Judge Diane Welsh (Ret.) of JAMS

15.     On October 20, 2015 counsel for the Parties engaged in a full day mediation session at the JAMS office in Philadelphia. The mediation was overseen by Magistrate Judge Welsh.

16.     In addition to being represented by three attorneys, Rita's was also represented by its Chief Executive Officer, Chief Financial Officer, and Chairman of the Board.

17.     During these negotiations, the Parties discussed the relative merits of the claims and defenses, the likely results if the case were litigated, and potential settlement frameworks. Ultimately, the Parties were unable to reach an agreement at the first mediation sessions. With Magistrate Judge Welsh's oversight and assistance, however, the Parties agreed to schedule a second mediation session

and to continue working toward a settlement.

18.     On December 23, 2015, counsel for the Parties reconvened at JAMS office in Philadelphia for a second full-day mediation session. Plaintiffs' counsel were joined by Stephen Shulman, a forensic accountant who Plaintiffs' counsel retained to review and analyze Rita's voluminous financial documents so that Plaintiffs could be certain that they were recovering the maximum amount possible for the Settlement Class.

19.     Following extensive negotiations and back and forth sessions with Magistrate Judge Welsh, counsel for the Parties were able to reach an agreement in principle with respect to the relief to be made available to the Settlement Class Members. Only after an agreement was reached with respect to such relief did the Parties negotiate the remaining settlement terms regarding attorneys' fees and the class members' incentive awards.

20.     Following the mediation, counsel for the Parties worked to draft and finalize the settlement documents, including all notices, claim forms, and related documents, and to prepare them for submission to the Court for approval.

### *Proposed Class Counsel's Experience and Opinion of the Settlement*

21.     The result of the mediation is a particularly strong settlement. Both firms seeking appointment as Co-Lead Settlement Class Counsel have substantial experience litigating and settling consumer class actions under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA"). Both firms are well respected in the Plaintiff's bar and have regularly engaged in major complex litigation involving the transmission of unlawful text messages, have the resources necessary to conduct litigation of this nature, and have been appointed lead class counsel by courts throughout the country. (*See* Firm Resume of Woodrow & Peluso, LLC, a true and accurate copy of which is attached hereto as Exhibit 1).

22.     Proposed Class Counsel have diligently investigated, prosecuted, and dedicated substantial resources to the claims in this action, and will continue to do so throughout its pendency. Based on this investigation and the information obtained through discovery, Proposed Class Counsel is confident that the instant settlement represents the best results the Settlement Class Members could have hoped to achieve under the circumstances. This is particularly true given Rita's limited resources and inability to satisfy a judgment worth hundreds of millions (or billions) of dollars.

23.     Based upon proposed Class Counsel's analysis and the information obtained from Defendant, the collective three million dollar ($3,00,000.00) monetary component—all of which, with the exception of uncashed checks and accrued interest on the Settlement Fund, gets paid out—represents an excellent recovery for the Settlement Class, especially when weighed against Defendant's anticipated defenses and the risks of litigation. Given the amount of money being made available to claimants after attorney's fees, expenses and costs of administration, it is likely that Settlement Class members who signed up under allegedly insufficient consent language prior to receiving any text messages from Rita's will receive around $250.00 ($1,860,353.87 divided by 138,895 times 5%). This is not an exact figure and will depend on the total number of valid claims received, the costs of Notice and Settlement Administration, and the Court's disposition of the Settlement Fund. Further, Settlement Class Members who replied "Stop" but were sent additional message, will receive an amount estimated to be over $2,500.00. The Settlement Class Members who file claims will split the available Settlement Fund—fewer claims means that the claimants each receive proportionally more.

24.     As such, Proposed Class Counsel believe that the Settlement Class Members in this case will receive substantial pay outs when weighed against other prominent TCPA class action

settlements. Rita's has further agreed to honor STOP requests and use appropriate TCPA disclosure language.

25.     The Settlement Agreement was in no way the product of collusion and was the result of arms'-length bargaining.

26.     Given the strength of the Settlement and the process used to achieve it, Proposed Class Counsel support the Settlement Agreement as it is worthy of preliminary (and ultimately final) approval.

Further affiant sayeth not.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed in Denver, Colorado, on March 14, 2016.

*/s/  Steven L Woodrow*
Steven L. Woodrow

# EXHIBIT  1

# WOODROW & PELUSO, LLC FIRM RESUME

WOODROW & PELUSO, LLC ("Woodrow & Peluso" or the "firm") is a plaintiff's class action and commercial litigation firm based in Denver, Colorado. The firm files cases across the Country.

Our attorneys have over a decade of experience successfully representing consumers and small businesses in matters nationwide. From litigation under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, to cases enforcing the rights of job applicants and employees under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, to appeals of first impression, our lawyers have litigated and favorably resolved numerous legal disputes to the satisfaction of our clients. At Woodrow & Peluso, LLC, we take special pride in the quality of our work product and strive tirelessly to achieve the best results for every client. Descriptions of our three primary practice areas—(1) Consumer Class Actions, (2) Commercial Litigation, and (3) Appeals—and key personnel follow.

## OUR PRACTICE AREAS

## 1.    CONSUMER CLASS ACTIONS

The majority of the firm's caseload focuses on consumer class actions. These cases include class actions alleging violations of statutes, such as the Fair Credit Reporting Act, the Telephone Consumer Protection Act, and the Truth-in-Lending Act, as well as class actions challenging systematic breaches of contract and advancing other common law theories.

### TCPA Class Actions

Since opening the firm's doors, Woodrow & Peluso attorneys have focused on litigating class actions challenging violations of the Telephone Consumer Protection Act. To date we have filed, prosecuted, and resolved using various settlement models TCPA cases against major corporations and entities including J.B. Hunt, Altisource, Acurian, Price Self Storage, Local Lighthouse, Global Marketing Research Services, Geekatoo, the University of South Carolina, among others. Our firm's attorneys have substantial experience prosecuting such claims, including class actions challenging the unlawful transmission of text messages, the sending of unlawful facsimiles, the placement of "robocalls" featuring a pre-recorded voice to residential landline phones, and the use of automatic telephone dialing systems, including predictive dialers, to call consumer cell phones.

While a Partner with his prior law firm, Woodrow & Peluso attorney Steven Woodrow was appointed interim co-lead class counsel in a TCPA class action against Nationstar Mortgage, LLC (*see Jordan et al v. Nationstar Mortgage LLC*, 3:14-cv-00787-WHO) and led TCPA litigation that resolved favorably against Bankrate Inc., and Carfax.com. Mr. Woodrow was also involved in the TCPA settlement reached in *Weinstein v. The Timberland Co. et al.* (N.D. Ill.), a text messaging class action featuring 40,000 unauthorized messages, and was part of the appellate strategy team that secured the landmark decision in *Satterfield v. Simon & Schuster,*

*Inc.*, 569 F.3d 946 (9th Cir. 2009), the first federal appellate decision to affirm that text messages are covered as "calls" under the TCPA.

### FCRA Class Actions

The second sub-focus within the firm's class action practice consists of cases under the Fair Credit Reporting Act ("FCRA"), which regulates the procurement and use of consumer reports by employers when they make hiring/firing/pay decisions. To date, the firm has successfully represented clients in putative class actions against Terminix, ServiceMaster, TrueBlue Inc./Labor-Ready Mid-Atlantic, FedEx, Tyler Staffing Services, Inc., Great Lakes Wine & Spirits, and many others.

### Banking and Financial Institutions Class Actions

Our attorneys have substantial experience representing consumers in class action litigation involving national banking associations and other financial institutions. Meaningful representations include:

- *Schulken v. Washington Mut. Bank*, No. 09-CV-02708-LHK, 2012 WL 28099, at *15 (N.D. Cal. Jan. 5, 2012). Attorney Steven Woodrow secured prior firm's appointment as Class Counsel from Judge Lucy Koh in class action challenging JPMorgan Chase Bank, N.A.'s suspension of former WaMu home equity line of credit accounts. Case settled with Mr. Woodrow's appointment as co-lead settlement class counsel.

- *In re JPMorgan Chase Bank, N.A. Home Equity Line of Credit Litigation*, MDL No. 2167. Attorney Steven Woodrow helped secure transfer by the Judicial Panel on Multidistrict Litigation to the Northern District of Illinois and appointment of prior firm as interim class counsel. Attorney Woodrow also negotiated and was also appointed co-lead settlement class counsel in settlement projected to restore between $3 billion - $5 billion in credit to affected borrowers in addition to cash payments.

- *Hamilton v. Wells Fargo Bank, N.A.*, 4:09-cv-04152-CW (N.D. Cal.). Attorney Steven Woodrow served as co-lead settlement counsel in class action challenging Wells Fargo's suspensions of home equity lines of credit. Nationwide settlement restored access to over $1 billion in credit and provided industry leading service enhancements and injunctive relief.

- *In re Citibank HELOC Reduction Litigation*, 09-CV-0350-MMC (N.D. Cal.). Attorney Steven Woodrow was appointed interim co-lead counsel and settlement class counsel in class actions challenging Citibank's suspensions of home equity lines of credit. The settlement was estimated to have restored over $650,000,000 worth of credit to affected borrowers.

- *Vess v. Bank of America, N.A.* 10cv920–AJB(WVG) (S.D. Cal.). Attorney Steven Woodrow negotiated class action settlement with Bank of America challenging suspension and reduction of home equity lines of credit.

- *Wigod v. Wells Fargo*, No. 10-cv-2348 (N.D. Ill.). Steven Woodrow secured the first appellate decision in the country recognizing the right of homeowners to sue under state law to enforce HAMP trial plan agreements. Attorney Steven Woodrow was appointed co-lead settlement counsel providing loan modifications and cash payments to affected borrowers.

**General Consumer Protection Class Actions**

Woodrow & Peluso attorneys have additionally successfully prosecuted and resolved countless class action suits against other companies for a range of consumer protection issues. For example, Woodrow & Peluso filed the first class action in the Country to challenge the marijuana industry's use of certain allegedly dangerous fungicides and pesticides and were the first lawyers to bring class actions (against the Colorado Rockies Baseball Club and Kroenke Sports & Entertainment, LLC) seeking to enforce the Colorado Consumer Protection Act, § 6-1-718 *et seq.*, which prohibits owners of entertainment venues from imposing restrictions on the resale of tickets. The firm has also brought and litigated class actions against hospitals for their use of "chargemaster" billing rates and are presently engaged in litigation against Southwest Airlines related to its "Companion Pass" program.

Woodrow & Peluso LLC has also brought claims against major food manufacturers and distributors for falsely advertising certain products as "All Natural" and "Made in U.S.A." Our attorneys also have experience litigating class claims regarding missing or misappropriated "bitcoins." Woodrow & Peluso also brought the first class action in Colorado against cannabis growers for their use of unapproved and harmful pesticides.

## 2.   COMMERCIAL LITIGATION

As small business owners, we understand and appreciate the challenges that new companies face as they strive to make headway in the market. Our attorneys regularly counsel small businesses and have represented such companies in a wide range of general commercial litigation matters including partnership and business disputes, breaches of contracts and term sheets, and claims charging company managers and members of breach of fiduciary duty, breach of contract, fraud, and fraudulent/preferential transfer. We regularly advise clients on matters and contracts involving millions of dollars, and our attorneys have successfully represented businesses and other entities in mediations, arbitrations, and trial.

## 3.   APPEALS

Our attorneys have substantial experience handling appeals at both the state and federal level. Representative appeals worked on predominately by our attorneys include:

- *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012). Attorney Steven Woodrow briefed and argued this appeal resulting in the first federal appellate decision holding that banks may be sued under state law for violations of the federal government's Home Affordable Modification Program. The opinion has been cited over 1,300 times by courts, litigants, and commentators throughout the Country and is widely regarded as the leading authority on the rights and obligations of HAMP servicers and borrowers.

- *Robins v. Spokeo*, 742 F.3d 409 (9th Cir. 2014). Attorney Steven Woodrow argued a federal appeal reversing dismissal and upholding consumer rights under the Fair Credit Reporting Act against one of the nation's largest online data aggregators regarding whether a plaintiff who does not suffer tangible pecuniary loss may still show legal harm to satisfy Article III standing. The case is currently pending before the United States Supreme Court and has been frequently reported on as one of three major class action issues presently on the Supreme Court's docket.

- *Equity Residential Properties Mgmt. Corp. v. Nasolo*, 364 Ill. App. 3d 26, 28, 847 N.E.2d 126, 128 (2006). Attorney Steven Woodrow helped author the winning brief in this landmark landlord/tenant appeal defining the requirements for constructive service and due process for Illinois evictions under the Illinois Forcible Entry and Detainer Act. 735 ILCS 5/9–107 *et seq.*

- *Fuentes v. Kroenke Sports & Entertainment, LLC*, Case No. 2014CV32619. Woodrow & Peluso appealed grant of summary judgment in favor of defendant finding that the Colorado Consumer Protection Act, 6-1-701 *et seq.* does not allow for class actions. Case settled prior to the resolution of the appeal.

## OUR ATTORNEYS

At present, our firm consists of 2 attorneys whose relevant experience is set forth below.

**STEVEN LEZELL WOODROW** has over a decade of experience advising consumers and small businesses in high stakes litigation.

Steven briefed and delivered the winning argument in the landmark federal appellate court decision *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012) holding banks accountable for violations of the federal Home Affordable Modification Program. The opinion is widely regarded as the leading authority on the rights and obligations of HAMP servicers and borrowers. Steven also delivered the winning oral argument in *Robins v. Spokeo*, 742 F.3d 409 (9th Cir. 2014), a federal appeal upholding consumer rights under the Fair Credit Reporting

Act against one of the nation's largest online data aggregators. The case is presently set for argument before the United States Supreme Court.

Mr. Woodrow was appointed lead class counsel in litigation against JPMorgan Chase Bank, N.A. challenging the bank's 4506-T HELOC suspension program and was appointed settlement class counsel in other HELOC litigation against Wells Fargo Bank, N.A., Citibank, N.A., Chase, Bank of America, N.A. and PNC Bank.

Mr. Woodrow also led the legal team that secured a preliminary injunction freezing the U.S. assets of Mark Karpeles, the former head of the failed Bitcoin exchange known as Mt. Gox, as well as an order compelling Mr. Karpeles to personally appear in the United States for a deposition in connection with Mt. Gox's Chapter 15 bankruptcy case in Dallas Texas.

Steven has also litigated putative class actions under the Telephone Consumer Protection Act, and courts have appointed him to serve as class counsel in nationwide settlements against cellphone companies, aggregators, and mobile content providers related to unfair billing practices, including *Paluzzi v. Cellco Partnership*, *Williams v. Motricity, Inc.*, and *Walker v. OpenMarket Inc.*

Steven has also served as an Adjunct Professor of Law at Chicago-Kent College of Law, where he co-taught a seminar on class actions. Prior to founding Woodrow & Peluso, LLC, Steven was a partner at prominent national class action firm based in Chicago (Edelson PC).

Prior to that that, he worked as a litigator at a Chicago boutique where he tried and arbitrated a range of consumer protection, landlord tenant, and real estate matters.

**EDUCATION**
Chicago-Kent College of Law, J.D., High Honors, 2005
The University of Michigan—Ann Arbor, B.A, Political Science, *with Distinction*, 2002

**ADMISSIONS**
State of Colorado (2011)
State of Illinois (2005)
United States Court of Appeals for the Seventh Circuit
United States Court of Appeals for the Ninth Circuit
United States District Court, District of Colorado
United States District Court, Northern District of Illinois
United States District Court, Eastern District of Michigan
United States District Court, Western District of Michigan

**PATRICK H. PELUSO** specializes in plaintiff-side consumer class actions.

With a true passion for protecting consumers and their rights, Patrick aggressively pursues class action lawsuits against companies who violate those rights.

Through these lawsuits, he is able to force la w-breaking companies to compensate the people they have harmed and correct their future practices. Patrick possesses the skills, strategic vision, and moxie to achieve excellent results for the pe ople he represents. He has experience working with a broad range of consum er protec tion la ws includ ing the Fa ir Credit Repo rting Act, the Telephone Consumer Protection Act, and various state consumer protection and consum er fraud statutes.

Patrick received his law degree from the University of Denver, Sturm College of Law where he was Editor-in-Chief of a n academ ic journal. Du ring law school, Patrick worked with a leading consumer class action law firm and held legal internships with a federal administrative judge and the legal departm ent of a publicly-traded corpor ation. Before law school, Patrick attended New York University, where he graduated with a B.S. and played on the school's club baseball team.

Patrick grew up in Baltimore, Maryland and now resides in Denver, Colorado.

**EDUCATION**
University of Denver, J.D. 2014
New York University, B.S.

**ADMISSIONS**
State of Colorado (2014)
United States District Court, District of Colorado